HARDY, Judge.
This is an action ex delicto by plaintiffs, husband and wife, for damages resulting from an automobile collision. Named as defendants, were Claude D. Stephens, driver of the allegedly offending vehicle, his employer, The B. F. Goodrich Company, and the public liability insurer of the vehicle, American Motorist Insurance Company. From judgment rejecting plaintiffs’ demands, they prosecute this appeal.
This case was consolidated with another suit, being a cross action by Claude D. Stephens claiming damages resulting from injuries sustained in the same accident, in which Mr. and Mrs. Williamson and their liability insurer, Granite State Fire Insurance Company, were named as defendants, and the plaintiff, Stephens, appealed from judgment rejecting his demands.
*745 No written opinions having been given by the trial judge, it can only be concluded that he found both Mrs. Williamson and Mr. Stephens guilty of negligence which caused or contributed to the accident, and therefore rejected the demands of plaintiffs in both suits.
There appears to be no real dispute as to the legal principles involved, and, accordingly, the issues presented are reduced to questions of fact.
The accident occurred about 9:00 o’clock, A.M. on Saturday, December 13, 1958, at the intersection of East Washington Street with the northbound lanes of travel of what is known as the Youree Drive Extension. The latter thoroughfare is a four-lane highway upon which the respective lanes for north and southbound traffic are divided by a broad neutral ground in excess of thirty feet in width. The two northbound lanes are shown to be approximately twenty-six feet in width. To the east of the northbound traffic lanes on Youree Drive there is another neutral ground in excess of thirty feet in width and a paralleling service road some twenty-five or twenty-six feet wide. From the intersection East Washington Street inclines to the east, reaching a crest some 150 feet, more or less, distant from its intersection with the service road. To the south, the direction from which Stephens was approaching, Youree Drive makes a perceptible curve at a distance of approximately 400 feet from the intersection. The intersection is controlled by five semaphore signal lights located on the two ends of the neutral ground and three of the corners of the intersecting streets. At the time of the collision Mrs. Williamson was driving the community owned 1955 Cadillac Tudor Sedan west on East Washington Street and defendant, Stephens, in the scope of his employer’s business, was driving his 1956 Chevrolet standard shift automobile north on Youree Drive. The point of impact can be established only with reference to measurements made by the investigating officers of the Shreveport Police Department, who reached the scene a few minutes after the occurrence of the accident.' According to a plat of the intersection and surrounding-area filed in evidence on behalf of Stephens and apparently accepted as reasonably accurate by all the parties, the impact occurred approximately in the center of the two northbound lanes of travel on Youree Drive and well within the north lane of East Washington Street, a two-lane highway approximately twenty-five feet in width. In the absence of operation of the controlling signal lights neither street is established as enjoying a preferred status by any law or ordinance. At the time of the accident a drizzling rain was falling and there is no question as to the fact that the traffic signals were functioning improperly. It was testified by Stephens — and we accept his testimony on this point — that the lights governing northbound traffic on Youree Drive were out as he approached and entered the intersection. It is the testimony of Mrs. Williamson, and this constitutes one of the hotly disputed material factual issues involved, that the lights governing westbound traffic on East Washington Street were operating, and that she entered the intersection on a green light signal. Photographs introduced in evidence graphically depict the areas of damage to the two vehicles involved, the right front and side of the Stephens Chevrolet being completely crushed and the left side of the Williamson Cadillac, from a point beginning about the middle of the door and extending to the front and including the left fender, headlight and bumper, evidencing serious damage. After the impact the Williamson Cadillac was propelled a distance of 43.7 feet north along Youree Drive, coming to rest headed in a northerly direction in the west lane of the northbound traffic section of Youree Drive; the Stephens car, moving a distance of 26 feet northwesterly, stopped' at the edge of the neutral ground of Youree Drive, north of the intersection. The drivers of the vehicles involved testified on trial, pf the case. The gist of Stephen’s testirqpny is that he observed that the lights were not operating in his direction; that *746 approximately 150 feet distant from the intersection he observed a car moving east on East Washington Street and crossing the lanes of southbound traffic on Youree Drive; that he focused his attention upon this vehicle and began sounding his horn, which he continued for the full distance of approximately 150 feet in order to assert and effect what he assumed was his right-of-way; that the car under his special observation stopped in the neutral ground area, whereupon he shifted into second gear and “proceeded through the intersection” (at one point in his testimony he declared that he “sped through the intersection”) ; that he first observed the Williamson car when he was about twenty-five feet south of the intersection, at which time it was moving slowly across the lateral service road to his right and that it appeared Mrs. Williamson was applying her brakes with the intention of stopping, and that he did not make any further observation and did not again see the Williamson car until he had an impression of the approach of a bulky object from his right, whereupon he turned sharply to the left in the attempt to dodge.
Mrs. Williamson testified that as she descended the slope of East Washington Street, and at about the time she reached the lateral service road, the signal lights in her direction changed from red to green, whereupon she entered the intersection with Youree Drive, slowing her car to permit a left-hand turn by an automobile, headed east on East Washington Street, into the northbound lane of Youree Drive and almost immediately thereafter she was struck by the Stephens’ car.
The testimony of Mrs. Williamson is corroborated by the deposition of a Mrs. LeMay, the only other eye witness to the accident. At the time of the taking of the deposition Mrs. LeMay was a resident of New Orleans, but at the time of the accident she resided in Shreveport on Kim-brough Street in what is known as the Anderson Island Subdivision located to the east of Youree Drive. This witness testified that she was following the Williamson car westbound on East Washington at a distance of approximately a half block; that she saw the collision which, as best she could estimate, occurred approximately in the center of the two northbound traffic lanes on Youree Drive, and that immediately thereafter she observed the signal lights facing her as showing the amber or caution signal, which, we here interpolate, follows a green signal and precedes a change to red.
In support of the contention on behalf of Stephens that the lights at the intersection were not operating in any direction, which would have the effect of impeaching the testimony of Mrs. Williamson and Mrs. LeMay, the testimony of two witnesses, Mrs. Bazer and Mrs. Holland, residents living on East Washington Street near the intersection, was tendered. Both of these witnesses testified that they were inside their homes when their attention was directed to the scene of the accident by the sound of the collision; one of them first went out on her front porch and then down to the street curb, at which time she made observation of the traffic lights on the east side and observed that they were not functioning. The other witness testified that at the time of the collision she was in her back bedroom engaged in sewing, heard the sound of the crash, got up from her machine, went out on her back porch which faces Youree Drive, saw the two cars that had been involved in the accident, noticed two of the traffic lights and observed that they were not functioning in any direction.
In an attempt to resolve the question of the operation of the traffic lights, the two police officers who investigated the accident' were closely questioned. One of the officers testified:
“We noted that the traffic lights were faulty. I cannot remember which light was out on which corner but the traffic lights were all messed up. I think the lights were out facing Youree on Youree.”
*747 This witness, Officer Byrnes, further testified that it was drizzling or misting rain and
“those lights are tricky. Sometimes they may work good for a minute. Usually it comes when they get wet. The control gets wet and those points can stick any kind of way.”
The other police officer, Delyser, testified that the lights were not working properly:
“ — but I could not tell you whether they were all out on one side or whether it was just a malfunction or whether some of them were working, I do not know.”
The unwillingness of the police officers to testify with respect to the operation of the lights at the time and their carefully qualified explanations appear to convey a clear implication that the faulty operation of the lights in one direction did not necessarily establish their failure in other directions, and this testimony strengthens rather than detracts from the reasonable conclusion that the lights, by reason of the weather conditions, could and did operate at intervals in one or more directions. We can find no sufficient reason for disregarding the positive testimony of Mrs. Williamson and Mrs. LeMay with respect to the operation of the lights. We do not mean this observation to impugn in the slightest degree the testimony of Mrs. Bazer and Mrs. Holland, but it is clear that their respective observations of the signal lights were made after the passage of an indefinite period of time following the impact. We think the question can be easily resolved by the logical conclusion that the green and amber lights to the east were operating at the time they were observed by Mrs. Williamson and Mrs. LeMay, but that their operation had ceased at the time the observations were made by Mrs. Bazer and Mrs. Holland.
As the result of the above evaluation of the testimony on this point, we are of the opinion that the evidence preponderates in favor of Mrs. Williamson’s contention that she entered the intersection on a green light signal. This being our accepted conclusion of fact, it follows, according to the most recent pronouncements of our jurisprudence, that she had the right to rely, upon her established right-of-way, to presume that signals will be understood and obeyed by drivers having an unfavorable light, was not' required to make any other observation of possibly conflicting traffic, and was not guilty of any character of negligence which caused or contributed to the accident. Shaw v. Globe Indemnity Company (2d Cir., 1960, writs denied), 134 So.2d 609; Derouen v. American Employers Insurance Company, 240 La. 486, 123 So.2d 896; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919.
Despite the above stated conclusions, considering the fact that some finely drawn distinction might be made under the circumstances of the instant case where the other motorist was denied the protection of properly operated signals, we think there are other well established facts which justify the same finding.
In the first place, we are impelled to the conclusion that Stephens’ version of the accident is utterly incredible. In passing, we observe that all the witnesses testified that immediately following the collision there was no traffic, either stopped or moving, on East Washington Street, nor did any other witness in the case testify to hearing the sound of the horn which Stephens testified he was operating for a distance of approximately ISO feet. In the second place, it must be noted that Stephens testified several times that he first observed the Williamson car moving very slowly and appearing to be under the application of brakes when he was only twenty-five feet south- of the intersection, and at which time the Williamson car was in the lateral service road or approaching the adjoining neutral ground area. Taken in connection with his further testimony that he shifted into second gear and “proceeded” or “sped” through the inter *748 section, it is abundantly clear that his testimony on these points was completely erroneous.
It must further be concluded that Stephens was devoting his entire attention to a car moving from his left which he was afraid might interfere with his supposed intersectional right-of-way, and he neglected to make any sort of proper and continuing observation of the Williamson car which was approaching from his right, and, therefore, even conceding the complete malfunction of signals, should have been accorded the statutory right-of-way under LSA-R.S. 32:237(A).
Nor do we have any doubt as to the fact that Mrs. Williamson, driving very slowly, actually entered and preempted the intersection, again accepting, arguendo, the contention that the signal lights were not operating in any direction. The photographs to which we referred in out statement of facts, supra, unquestionably establish the points of impact between the vehicles involved as being the right front of the Stephens Chevrolet and the left side and front of the Williamson Cadillac, and, as we have found, the collision took place approximately in the center of the two northbound lanes on Youree Drive. There can be no question that the Williamson Cadillac was approximately halfway across the intersection when it was struck on the left side by the right front of the Chevrolet, which Stephens testified he had turned sharply to the left. Finally, the location of the vehicles and the distances traveled after the impact are conclusive on the point that Stephens must have been traveling at a high rate of speed in order for his Chevrolet to have driven the heavier Cadillac automobile more than forty feet at a right angle to its direction when struck.
The record fails to disclose any basis for a finding of negligence on the part of Mrs. Williamson. If, as we believe and have above declared, she was proceeding in response to a green traffic light, there can be no doubt as to her right to cross the intersection by preference; and, if, upon the assumption of the complete malfunction of the traffic signals, which we do not believe to have been established, she proceeded into the intersection and preempted the same, she had the right to rely upon her statutory right-of-way, and her failure to observe the approach of the Stephens’ car was not a factor causally connected with the accident.
There remains for our consideration the matter of the quantum of damages. The principal injuries received by Mrs. Williamson, in addition to multiple cuts and bruises to the left side of her body, consisted of hematomas resulting from a severe cut and bruise on the left arm and a bruise to her left hip. Following the accident Mrs. Williamson was taken to the Schumpert Sanitarium where she was treated until the following afternoon, at which time she returned home where she remained in bed for a week before being taken to her parents’ home in Marthaville, where she was bedridden for most of an additional month. Approximately four months after the accident her treating physician advised Mrs. Williamson to return to her normal duties, which, according to her testimony, she was able to perform only in serious discomfort and pain. About fifteen months following the accident Mrs. Williamson consulted another physician with reference to complaints of the continuance of extreme nervousness, headaches and a sore and extremely sensitive condition of her left hip. As of the date of trial, about two and one-half years following the accident, Mrs. Williamson continued to complain of pain in her hip, but the most serious effects of the accident apparently had long since been overcome. No contention is made as to any continuing disability, and, in our opinion, Mrs. Williamson’s recovery of damages should be confined to a reasonable allowance for several months of extreme pain and suffering and an additional period of lesser discomfort coupled with a disability to properly perform her household duties without pain. Under the circumstances we think *749 an allowance of $3,000.00 should represent adequate compensation.
 Damages should be further assessed in favor of the plaintiff husband representing property damage to the Cadillac automobile, together with medical, hospital expenses, etc. There is some indication in briefs that this plaintiff’s insurer, Granite State Fire Insurance Company, has been subrogated to plaintiff’s claims for damages to the automobile, subject to the application of the $100.00 deductible clause provided in the policy, but we fail to find any formal subrogation contained in the record or any prayer for judgment on this item except in favor of the plaintiff insured. For that reason damages must be awarded to the said plaintiff, it being understood that the award for property damage to the automobile is subject to adjustment as between the insured and insurer. The record establishes the damage to the automobile in the sum of $1,697.94 and additional allowable items of damages for expenses in connection with Mrs. Williamson’s injuries in the amount of $244.97. It follows that damages in the sum of $1,942.91 should be allowed in favor of this plaintiff.
For the reasons assigned the judgment appealed from is annulled, avoided, reversed and set aside, and
IT IS NOW ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Ruth K. Williamson, and against the defendants, Claude D. Stephens, Jr., The B. F. Goodrich Company, and American Motorists Insurance Company, in solido, in the full sum of Three Thousand and No/100 ($3,000.00) Dollars, with interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Blanchard Williamson, and against the defendants, Claude D. Stephens, Jr., The B. 'F. Goodrich Company and the American Motorists ■Insurance Company, in sólido, in the full sum of One Thousand Nine Hundred Forty-two and 91/100 ($1,942.91) Dollars, with interest thereon from date of judicial demand until paid.
All costs of both courts are assessed against the defendants above named.