129 So.2d 908 (1961)
Edith M. Olson HUNTER
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION et al.
No. 5332.
Court of Appeal of Louisiana, First Circuit.
April 10, 1961.
Rehearing Denied May 22, 1961.
*909 Cashio, Cashio & Molloy, Maringouin, Seale, Hayes, Smith, Keogh & Franklin, Baton Rouge, for appellant.
Wood & Jackson, Jack L. Simms, Leesville, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
HERGET, Judge.
Plaintiff sues for damages resulting from injuries sustained by her when the vehicle in which she was a passenger, a 1956 Mercury, driven west by her husband Gilbert M. Hunter on U. S. Highway 190 collided with a 1947 Chevrolet automobile driven in a northerly direction on Louisiana Highway 81 by John G. Jarreau, the minor son of Albert Jarreau, at noon on December 22, 1957.
This suit was originally instituted by Mrs. Hunter seeking to recover for the personal injuries she sustained in the accident. In addition, she sought damages for loss of wages which, under the law of Louisiana, were not recoverable by her, same being community assets recoverable by the husband as head and master of the community, but by stipulation of counsel for Plaintiff and Defendants, this item of damage was omitted from the suit.
The Plaintiff joined her husband's automobile liability insurer, United Services Automobile Association, and Albert Jarreau, father of John, with whom John was living, as parties defendant.
Plaintiff alleges the negligence of her husband consisted of driving at an excessive rate of speed under the circumstances; in failing to keep proper control or to keep a look-out ahead or to see what he should have seen; in failing to apply his brakes when he saw Jarreau's vehicle enter the intersection from the left; in failing to blow his horn and to slow down or turn to the left to avoid the collision.
Petitioner alleges that young Jarreau was negligent in driving at an excessive rate of speed; in failing to keep his vehicle under proper control; in not keeping a proper look-out and failing to see what he should have seen, and in entering the intersection without the right-of-way.
United Services Automobile Association in its answer denied any negligence on the part of its assured and contends that the accident was caused by the gross negligence of John Jarreau. A general denial was filed by Defendant Albert Jarreau.
The accident occurred in Pointe Coupee Parish near Lottie, Louisiana at the intersection of U. S. Highway 190 with Louisiana Highway 81. At this point U. S. Highway 190 is a four-lane major highway, having two lanes for traffic proceeding in a westerly direction and two lanes for traffic proceeding in an easterly direction. The northernmost lane for traffic proceeding in a westerly direction on said highway measures 11 feet, 4 inches and the inside lane for traffic in the same direction measures 13 feet, 10 inches. There is a broad neutral ground separating the lanes for easterly and westerly traffic measuring 20 feet. Each of the two lanes for easterly traffic measures 11 feet, 5 inches. The intersecting road, Louisiana Highway 81, is a blacktopped road on the south and a dirt road on the north of U. S. Highway 190 and is 22 feet, 4 inches in width. There was a stop sign located 95 feet south of the south edge of U. S. Highway 190 on Louisiana Highway 81, enjoining vehicles traveling in a northerly direction on Louisiana Highway 81 to stop and yield the right-of-way to vehicles traveling on U. S. Highway 190.
John Jarreau, the driver of the 1947 Chevrolet coach, testified he was driving his mother home from church and intended to cross Highway 190 and continue north on Louisiana Highway 81. Though the stop sign is some 95 feet south of the south *910 edge of U. S. Highway 190, young Jarreau testified he came to a stop at the edge of the highway, looked both ways on U. S. Highway 190 and seeing no cars in either direction approaching, proceeded into the intersection at a speed which he estimated to be 5 to 15 miles per hour and without stopping in the neutral ground before entering the lanes for traffic traveling in a westerly direction on U. S. Highway 190 he attempted to cross the two lanes and had executed the crossing with the exception of about three feet on the northernmost side of Highway 190 when his automobile was struck by the Hunter car almost in the back fender, although a photograph of his vehicle reveals that the point of contact on his vehicle was at the door post on the right side.
Plaintiff's attorneys called for cross-examination Mr. Gilbert M. Hunter, who is not a party to this suit but who is the assured of defendant insurance company, under the provisions of LSA-R.S. 13:3663 [see LSA-C.C.P. arts. 1436, 1634], reading as follows:
"Where any of the parties litigant is an individual, a corporation, partnership or other legal entity, the parties examining shall be entitled to examine under the provisions of R.S. 13:3662 through 13:3664 the particular agent or representative of such individual or officer or officers or other representatives of such corporation, partnership or other legal entity having or having had knowledge, charge or supervision in whole or in part of the matter in question, whether or not such party is at the time an agent or representative or member of or otherwise connected with such individual, corporation, partnership or other legal entity."
Counsel for defendant insurance company vigorously objected to the right of Plaintiff to call Mr. Hunter under cross-examination and the Trial Court overruled the objection. The purpose of the rule as set out in the above quoted statute is to afford to a plaintiff the right to cross examine the real party in interest without vouching for his credibility or being estopped from later on impeaching him. Concededly, where, as the evidence shows in this case, Mr. and Mrs. Hunter had been happily married for thirty years it is doubtful that Plaintiff would have found it necessary to impeach his testimony. Nonetheless, despite the relationship of husband and wife and although the husband was the assured of Defendant, we are of the opinion that Plaintiff, under the statute, was afforded the right to call him for cross-examination and the Trial Court correctly overruled the objection of the Defendant thereto.
Despite the relationship of Mr. Hunter and the Plaintiff and the natural human desire to assist her in obtaining judgment for the damages sustained by her resulting from the collision, in reading his testimony we find nothing therein to indicate any effort on his part to color his testimony or tell anything other than the truth. Although he admitted he was hazy as to when and where he saw the vehicle driven by Jarreau, he stated he had seen the car but thought it would not come across the intersection into his path and the next thing he knew it was in front of him. He was unable to state whether the Jarreau vehicle had proceeded across Highway 190 from the south going north, but was adamant in his belief that he thought the car would not continue into his path. He testified he had been traveling on U. S. Highway 190 well within the speed limit of 60 miles per hour, and in the statement given to the insurance company following the collision he estimated his speed to be 40 miles an hour, which he affirmed while a witness.
At page 76 of the testimony, he said:
"Q. Now, after you first saw this automobile in the highway in front of you, did you slow down, or did you speed up, or did you continue in the same speed? A. My impression is that I took my foot off of the accelerator, and then perhaps I put my foot on *911 the accelerator, and then the brakes. In other words, a little bit of that`He's going to stop,' and so I started to stop, and I figured, `Well, he'll stop,' and he starts, and I am going. I don't know if I make myself clear on it, but I'm a little hazyexcept that I put on the brakes just as soon as I saw him coming.
"Q. In other words, you think, then, that you took your foot off of the accelerator initially, then put your foot on the brake. Is that correct? A. Well, I'm not positive, butit's one of those thingsit happened pretty fast, andbut I put on the brake just as soon as I saw himwhen I was sure he was coming on to the highway. (Emphasis ours.)
"Q. In other words, that's the best of your recollection? A. Yes, sir."
Mr. John P. Pizzolato, State policeman who investigated the accident, testified he arrived at the scene of the collision some ten minutes after it occurred; that the weather was clear and the pavement was dry, and that he noticed skid marks left by the Mercury driven by Mr. Hunter. He found 81 feet of what he described as a combination of tire marks and skid marks made by the Mercury vehicle prior to the point of impact. He related that when brakes are applied the tires will leave a black mark and when the brakes are completely locked there are skid marks. The direction of the marks left by the Hunter car indicated a turn to the right. His report was that neither of the drivers had been drinking; that the point of impact was approximately 4 or 5 feet south of the north edge of the northernmost lane of U. S. Highway 190; that the point of impact was about the middle of the right side of the Chevrolet; that Jarreau did not have the right-of-way and that he disregarded the stop sign, and that as to Mr. Hunter there was no improper driving indicated on his part.
Mrs. Hunter, the Plaintiff, testified there was nothing about the way her husband was driving that indicated any improper driving on his part; that he was a good driver, and she also stated she had not seen the Jarreau vehicle until immediately prior to the accident. She was hazy as to the point she first saw it, whether it was in the island, that portion of the neutral ground which is paved to permit traffic crossing U. S. Highway 190 on Louisiana Highway 81 to stop for traffic on the favored highway or just as it was entering U. S. 190; that it was difficult to tell exactly how the accident happened because it happened so quickly. One explanation of why she had not seen the Jarreau automobile prior to the imminence of the collision was that, "It was an open highway and I just wasn't looking for anything."
Though the evidence shows at the point where this accident occurred the highway is straight and there was nothing to obstruct the view of either of the drivers, possibly an explanation of why neither of the drivers saw the other may be found in the testimony of Mrs. Hunter to the effect that there had been a car which they had been following for the past several miles immediately prior to the collision which was several car lengths in front of their car going the same speed the Hunter vehicle was traveling. She was unable to remember whether that car was in the inside or the outside lane of traffic. In her testimony, however, she was of the opinion this car would not have blocked their view of the Jarreau car because it was too far ahead of them to have done so, and while she did not testify positively that the preceding car passed the intersection prior to the collision Mr. Hunter had with the Jarreau car, it is apparent from the evidence that such was the case.
Upon this state of facts the Trial Judge rendered judgment in favor of Plaintiff and against the Defendants, in solido. No appeal was taken from the judgment by Jarreau, so the matter is before us on appeal *912 by United Services Automobile Association from the judgment in favor of Plaintiff and the answer of Plaintiff to the appeal requesting an increase in the award.
In our opinion we are satisfied from the evidence that this unfortunate accident resulted from the gross negligence of young Jarreau in attempting to traverse this highly traveled four lane U. S. Highway 190 without exercising the degree of care imposed upon him under the law. Even without the presence of the stop sign it should be apparent to the ordinary motorist that this major artery is a highway providing through passage for vehicles traveling at a rapid lawful speed of sixty miles per hour. Certainly a motorist does not discharge the obligation placed upon him by stopping at the outer edge of said highway and proceeding blithely across a heavily traveled four lane highway without observing the presence of vehicles on said highway whose speed and proximity to the intersection he is attempting to cross serve as ample warning that his entry could not be made with safety.
From the physical facts as shown by the skid marks left by Mr. Hunter's vehicle, it is apparent that the Hunter car was in such close proximity to the intersection and traveling at such a speed that Jarreau, had he observed the approaching Hunter car, could not have possibly with any degree of safety crossed the intersection.
Counsel for Plaintiff maintains that had Mr. Hunter been keeping the proper lookout he would have observed the Jarreau vehicle in time to avoid striking him either by applying his brakes or by passing to the rear of the Jarreau car.
A motorist on a through highway, such as U. S. 190, exercising due care is under no duty to anticipate that another motorist will grossly negligently enter an intersection on the highway in the path of his car traveling at the lawful speed when, because of his proximity to the intersection, such could not be done in safety. Furthermore, even had Mr. Hunter observed the Jarreau vehicle when it crossed the two traffic lanes of U. S. Highway 190 for traffic traveling in an easterly direction, there was nothing about the speed Jarreau was traveling or the manner in which he was driving which would signify he would not stop and accord to Mr. Hunter the right-of-way.
To accomplish the purpose for which such throughways are designed, a prudent motorist traveling on a super highway, such as U. S. 190, at the lawful rapid permitted speed, must concentrate his attention on the path ahead and is guilty of no negligence in failing to anticipate a motorist on a minor intersecting highway will enter the path of his travel.
There is no merit to the contention of Plaintiff that Mr. Hunter could have avoided the accident by passing to the rear of the Jarreau car for, when confronted with the emergency as he was which was not of his making but was the result of the gross unanticipated and not reasonably to be anticipated negligence of Jarreau in entering his path, he was not afforded the opportunity of deliberating on his choice of avoiding the accident and is not charged with negligence because his split-second choice of movement turned out to be wrong. Furthermore, Mr. Hunter was not afforded the opportunity of checking his rear view mirror to observe following traffic and without such observation by swerving to his left to avoid the collision with the Jarreau vehicle he might well have found himself faced with a far greater danger in colliding with a car in the adjoining traffic lane.
We, therefore, are of the opinion that the sole proximate cause of this accident was the gross negligence of John Jarreau in driving his vehicle prematurely into the intersection at a time when the Hunter vehicle proceeding on the highly favored highway was in such close proximity and traveling at such a speed that it constituted an immediate hazard, and the *913 resulting collision could have been avoided solely by the exercise of due care by Jarreau. McCollister v. Gatti et al., La.App., 64 So.2d 447; Hooper v. Toye Bros. Yellow Cab Co., La.App., 50 So.2d 829; Glen Falls Ins. Co. v. Copeland, La.App., 28 So. 2d 145.
As a result of the collision Plaintiff suffered a fracture of the patella or kneecap, fracture of six ribs, a laceration under the left eyebrow, and an assortment of contusions and abrasions. In major surgery one-third of Plaintiff's kneecap was removed, with a decided possibility that the remaining fragment will have to be removed in the future if arthritic complications set in, such complications being likely in a 62 year old patient. The period of recovery from the operation was long, confining and uncomfortable. Though no treatment other than bed rest was prescribed for the ribs, which healed satisfactorily, such injuries are most painful. In addition, several stitches were taken in the lacerated eyelid. The District Judge rendered judgment in the sum of $7,000 which we believe is a proper award. Appellant brings to our attention the case of Soileau v. Manuel et al., La.App., 109 So.2d 502, in which the plaintiff suffered a broken kneecap which would cause him to walk with a limp for the remainder of his life and for which he was awarded the sum of $5,000. However, since there is a clear possibility Mrs. Hunter might be forced to resort to future operative procedure for the removal of her entire patella, and since she has already undergone a serious and painful operation, we cannot say the lower court rendered judgment for an excessive amount as opposed to the Soileau case, upon observing that the Plaintiff in the Soileau case, while perhaps as disabled as Mrs. Hunter, did not undergo the surgery she did.
For these reasons, the judgment in favor of Edith M. Olson Hunter and against Albert Jarreau is affirmed, and the judgment in favor of Edith M. Olson Hunter and against United Services Automobile Association is reversed, and judgment is rendered in favor of United Services Automobile Association and against Mrs. Edith M. Olson Hunter dismissing her suit at her cost.
Affirmed in part, reversed in part.