FRUGÉ, Judge.
Plaintiff instituted this suit against her husband’s liability insurer, State Farm Mutual Automobilie Insurance Company, for personal injuries received as the result of an intersectional collision which occurred in the City of Alexandria, Louisiana, on August 7, 1961. The defendant insurer made a third party demand against James Sykes, and plaintiff amended her petition alleging that her injuries were caused by the joint negligence of her husband and an employee of Sykes.[1] From a judgment holding both defendants jointly and solidarily liable in the amount of $1,500, State Farm Mutual has appealed, and plaintiff has answered the appeal seeking an increase in the award.
Since the testimony adduced at the trial of this case is not in conflict, the essential facts may be briefly set forth without a great deal of comment on our part. The accident occurred at the intersection of Hill and Chester Streets in Alexandria, Louisiana. This intersection is normally controlled by a semaphore traffic signal, which was not in operation at the time of the accident. Immediately preceding *289 the accident, at approximately 3:30 p. m., plaintiff’s husband, Anthony Soprano, with whom plaintiff was riding, was driving his automobile in a southerly direction on Chester Street, while the defendant Sykes’ employee, Paul Davis, Jr., was driving a taxicab in a westerly direction on Hill Street. It was raining very hard at the time of the collision and the streets were wet. Additionally, each driver’s view of the other was obstructed because of a house and tree located on the Northeast corner of the intersection.
Soprano approached the intersection at a speed of 15 to 20 miles per hour. When his view became unobstructed, he looked to his left and his right, and, upon seeing the vehicle operated by Davis, he applied his brakes. However, due to the wet conditions, his brakes did not hold and he skidded into the Davis vehicle. It appears that Davis was driving at an excessive rate of speed when he entered the intersection and that his brakes were not operating. The left front fender of the Soprano automobile struck the right side of the Davis vehicle approximately between the front and rear doors.
Since the defendant, Sykes, has neither appealed nor answered appellant’s appeal, the lower court’s judgment as to his liability is not reviewable by this court on appeal. Accordingly, the sole question before this court is the negligence vel non of Mr. Soprano.
Before attempting to resolve the question of Mr. Soprano’s negligence, we deem it necessary to consider a procedural objection raised by counsel for the defendant insurer in the lower court, and urged before this court on appeal. The record discloses that plaintiff’s counsel called Mr. Soprano on cross-examination under the provisions of LSA-C.C.P. Art. 1634, which provides:
“Any party or his representative may be called as a witness and cross examined by an adverse party without the latter vouching for his credibility, or being 'precluded from impeaching his testimony. The court may permit the recall and further cross examination of the party or his representative as often as it deems in the interest of justice.
“ ‘Representative’ as used in the paragraph above and in Article 1428(2) means an officer, agent, or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time his testimony is taken.”
This identical question was raised in the case of Hunter v. United Services Automobile Association, La.App., 129 So.2d 908, at page 910, wherein the court stated:
“Counsel for defendant insurance company vigorously objected to the right of Plaintiff to call Mr. Hunter under cross-examination and the Trial Court overruled the objection. The purpose of the rule as set out in the above quoted statute is to afford to a plaintiff the right to cross examine the real party in interest without vouching for his credibility or being estopped from later on impeaching him. Con-cededly, where, as the evidence shows in this case, Mr. and Mrs. Hunter had been happily married for thirty years it is doubtful that Plaintiff would have found it necessary to impeach his testimony. Nonetheless, despite the relationship of husband and wife and although the husband was the assured of Defendant, we are of the opinion that Plaintiff, under the statute, was afforded the right to call him for cross-examination and the Trial Court correctly overruled the objection of the Defendant thereto.”
In the instant case, after reading the testimony of Mr. Soprano, we fail to see where the defendant insurer was prejudiced by his being called on cross-examination. Indeed, short of denying the existence of the accident, we fail to see how he could have *290 testified in a way more favorable to the defendant insurer. In our opinion, his cross-examination was properly permitted by the trial court.
Concerning the negligence vel non of Mr. Soprano, counsel for the defendant insurer urges most forcefully that where traffic signal devices are temporarily out of operation the right and duties of persons entering an intersection are governed by LSA-R.S. 32:237 (now LSA-R.S. 32:121), and that under this statute Anthony Soprano had the directional right of way and could assume that the traffic approaching the intersection to his left would observe the law and yield the right of way.
The rights and duties of drivers approaching an intersection normally controlled by a semaphore signal, which is temporarily out of operation, have been considered by the courts of this state on only one occasion. In Montalbano v. Hall, La.App., 108 So.2d 16, the Second Circuit, referring to LSA-R.S. 32:237(A) (which provides that when two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way) stated, at page 19 :
“ * * * Application of the statute would also appear appropriate where traffic was not controlled by automatic signal devices, whether such signals were non-existent or temporarily out of operation. * * * ”
The Montalbano decision, supra, in effect permits a driver approaching an intersection controlled by a semaphore signal, which is temporarily out of operation, to assume that he has the right of way over all vehicles approaching from his left. Furthermore, this decision indicates that the driver approaching from the right may indulge in the assumption that all vehicles approaching from the left will respect this right of way and act accordingly.[2]
With all due respect to our learned brethren of the Second Circuit, we think they erred in applying the provisions of LSA-R.S. 32:237(A) to an intersection, where a semaphore signal is totally inoperative. In reaching this conclusion, we note the following factors that should be considered in resolving a question of this nature. Both Soprano and Davis were confronted with a blank traffic signal, but, inasmuch as their respective views of the traffic light were limited to one side, neither could have possibly known whether or not the signal light on the intersecting street was operating. It is true that Soprano testified to the effect that he knew the traffic signal was not working on either side, but examination of the record reveals no reasonable hypothesis to support such a statement. As far as either Soprano or Davis knew, the other might have been faced with a blank signal, a green light, or a red light. Certainly the rights and duties of drivers approaching an intersection should not depend upon whether or not their conjecture as to a particular condition is correct or not. We know of no rule of law that grants the driver of a vehicle the right of way where he correctly assumes an existing condition, and denies the same right of way when the assumption is found to be erroneous. Had the signal light facing Davis been green, we would necessarily *291 have to conclude that he had the right of way and that Soprano was negligent in entering the intersection and not yielding the right of way, notwithstanding the fact that the latter had assumed that the signal device was totally inoperative. See: Ohio Casualty Insurance Company v. Marquette Casualty Company, La.App., 140 So.2d 750; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292. We see no reason why a different rule of law should apply simply because Soprano was correct in his assumption where he was faced with the identical traffic situation insofar as he knew.
In the instant case, Soprano approached the intersection not knowing the traffic conditions on the intersecting street. Accordingly, he had the duty to keep his vehicle under proper control so as to be able to come to a stop if the need arose. That he was driving his automobile at a speed not in excess of the speed limit is not necessarily determinative of the question of maintaining proper control, for it is well established under jurisprudence of this state that the question of whether driving at a particular speed constitutes negligence is to be determined not by any particular speed limit but by the facts of the particular occurrence. Geoghegan v. Greyhound Corp., 226 La. 405, 76 So.2d 412; Lopreore v. New Orleans Public Service, La.App., 27 So.2d 737. Considering the weather conditions and the obstructed view of traffic on the intersecting street we think that Soprano’s speed in approaching the intersection constituted negligence which was a contributing cause of the accident. Although he hit his brakes as soon as he was able to see the automobile driven by Davis, his speed was such that, due to the wet condition of the street, he was unable to stop. Had he brought his vehicle under proper control by reducing his speed commensurate to the weather and traffic conditions he would have been able to avoid the collision. See Davis v. Great American Indemnity Co., La.App., 76 So.2d 103; Lewis v. Quebedeaux, La.App., 134 So.2d 93.

Damages.

As a result of the accident, plaintiff, who was sitting in the right front seat of the Soprano automobile, suffered fractures of the 9th and 10th ribs. That she experienced physical pain as the result of these injuries is not in dispute. Her attending physician testified that she experienced pain as the result of these injuries for a period of about six months, and that up to the time of the trial, about one year and four months later, she was still suffering intermittently ; although to a lesser degree.
An award for personal injuries depends in each case upon its own factual circumstance, which necessarily vary from case to case. Accordingly, no definitive rule can be established insofar as the measurement of damages is concerned. However, keeping in mind awards made in similar cases so as to maintain some degree of uniformity, we do not think that the lower court’s award of $1,500 was either manifestly excessive or inadequate. See Vidrine v. Southern Farm Bureau Casualty Insurance Co., La.App., 105 So.2d 279.

Interest on the Judgment.

Counsel for the defendant insurer lastly contends that the lower court erred in awarding interest from the date of judicial demand. It is urged that, inasmuch as the policy provisions limit the payment of interest from date of judgment, the contractual obligation of the insurer is limited thereby.
This identical issue has been considered on two occasions by the courts of this state and decided adversely to the defendant insurer’s position. Thus, in LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245, 248, our Supreme Court stated: “Where a policy of insurance provides for interest at a lesser rate or for a shorter term, than the law fixes, it is in contravention of law.”
*292 Similarly, in Woodward v. Tillman, La. App., 82 So.2d 121, the court stated:
“Contentions identical to those raised by appellant herein were decided adversely in LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245; Id., La.App., 8 So.2d 83, where the court held mandatory the legislative provision that in damage suits ‘Legal interest shall attach from date of judicial demand’, LSA-R.S. 13:4203, and further held invalid the policy provision limiting interest to date of judgment rather .than demand as in contravention of the just-quoted legislative provision, citing the Act incorporated in the Revised Statutes as LSA-R.S. 22:655.”
These statements adequately dispose of defendant’s contention..
For the reasons assigned herein, the judgment of the district court is therefore affirmed; appellant to pay all costs of this appeal and of these proceedings
Affirmed.
On Application for Rehearing
En Banc. Rehearing denied.

. Initially the defendant insurer made a third party demand against Sykes and his employee, Paul Davis, Jr., and plaintiff amended her petition to join both Sykes and Davis as party defendants. However, inasmuch as service was not obtained on Davis, his liability was not at issue in the trial court and accordingly not before this court on appeal.

. The Second Circuit, in Williamson v. Stephens, La.App., 140 So.2d 743, announced a rule similar to the one enunciated in the Montalbano decision, but, inasmuch as the court had already concluded that the driver approaching from the right had a green light, its statement concerning the applicability of the statutory right of way is dictum.
For the rights and duties of motorists entering an intersection, where one is confronted with a green light and the other is faced with a burned out signal, see Kientz v. Charles Dennery, Inc., 209 La. 144. 24 So.2d 292. Where both drivers approaching an intersection are faced with a green light, see Scharfenstein Coal Co. v. Claiborne, 17 La.App. 212, 135 So. 744. See also 74 A.L.R. 2d 242 for a discussion of other variations of this problem.