SUMMERS, Justice.
 

 This is a tort action for personal injuries received by Mrs. Virginia Soprano in an. automobile collision. She instituted suit directly against State Farm Mutual Automobile Insurance Company, the liability insurer of the automobile in which she was riding which was owned and driven by her husband, Anthony Soprano. State Farm Mutual answered and denied the negligence of Anthony Soprano, pleading the negligence of one Davis, the driver of the other automobile involved, whom it joined as third party defendant with James Sykes, employer of Davis and owner of the automobile driven by Davis. However, Davis was not served and he was therefore never a real party to the suit.
 

 Mrs. Soprano then amended her petition, alleging that her injuries were caused by the joint negligence of her husband, the driver of the automobile in which she was riding, and Davis, the employee of Sykes and driver of the other automobile. The trial court rendered judgment in favor of plaintiff, Mrs. Soprano, for $1500 against State Farm Mutual Automobile Insurance Company and Sykes, jointly and in solido. State Farm Mutual appealed and Mrs. Soprano answered. The court of appeal affirmed the judgment. Since Sykes neither appealed nor answered, the judgment as to him is final — the sole question being whether Mr. Soprano was negligent, it being necessary for plaintiff to establish his negligence to sustain the judgment against his insurer.
 

 On August 7, 1961, at approximately 3:30 p. m. the plaintiff, Mrs. Virginia Soprano, was riding in the front seat with
 
 *529
 
 her husband, Anthony Soprano, who was driving his Chevrolet automobile in the city of Alexandria. They were proceeding at a speed of IS to 20 miles per hour in a southerly direction on Chester Street and approaching its intersection with Hill Street. At that time Paul Davis, driving a Dodge taxi belonging to James Sykes, was proceeding at an excessive rate of speed, in a westerly direction on Hill Street and approaching its intersection with Chester Street. The vehicles arrived at the intersection at approximately the same time.
 

 It was raining and the streets'were wet. A tree and a house at the northeast corner of the intersection obstructed the vie.w of both drivers. The three-phase, four-sided semaphore signal light which had controlled traffic at the intersection for many years was not operating. The device was, however, in place.
 

 _ Upon entering the intersection Davis, the driver of the Dodge, applied the brakes, but they did not work, and his car sped into the intersection without slowing down. As Soprano entered the intersection and upon seeing the Dodge, he applied the brakes and attempted to turn to the right to avoid a collision, but, because of the wet street, the Chevrolet skidded about twenty feet and its left front bumper and fender struck the Dodge midway on its right side. The collision occurred in the intersection about three feet below the center line of Hill Street and near the west line of Chester Street.
 

 The impact precipitated Mrs. Soprano about the car, against the dashboard and then into the steering wheel causing her injuries.
 

 We understand the streets were of equal dignity for the evidence does not disclose the existence of any ordinance of the city of Alexandria designating either Chester Street or Hill Street as a right of way or preferred street. And there is no evidence of any ordinances otherwise governing traffic at the intersection. In the absence of such ordinances, when a proper traffic control device exists, a motorist has a right to assume that the device has been lawfully installed and that he must obey its signals. He has a corresponding right to assume that other motorists entering the intersection will also obey the signals.
 

 The question presented here, however, concerns the rights and duties of drivers approaching an intersection normally controlled by a three-phase, four-sided semaphore signal which is in place but temporarily out of order.
 

 State Farm Mutual, Mr. Soprano’s insurer, contends that because the semaphore signal was not operating we must apply the statutory rules of right of way enacted by
 
 *531
 
 the State to facilitate the movement of vehicular traffic. This would require us to govern the rights of the parties by the provisions of LSA-R.S. 32:237(a)
 
 [1]
 
 (Now LSA-R.S. 32:121) and recognize the right of way in the driver approaching the intersection from the right. Under this theory, State Farm Mutual contends that Soprano, approaching the intersection from the right, would have the right of way and would be free of negligence.
 

 In 1958 this State’s Second Circuit Court of Appeal in Montalbano v. Hall, 108 So.2d 16, referring to R.S. 32:237(a), found that statute applicable under such circumstances and recognized the preferred position of the motorist approaching the intersection from the right. Recently, the Third Circuit in the case now before us (155 So.2d 287 (1963)) was of the contrary opinion and declined to follow the holding of the Second Circuit. Because of this conflict we granted certiorari. La.Const. of 1921, art. 7, § 11, LSA.
 

 When this same problem was considered by the Court of Appeal, Second Circuit in Montalbano v. Hall, supra, the court, in holding that the vehicle approaching the intersection from the right was entitled to the right of way granted by R.S. 32:237(a), said: “ * * * Application of the statute would also appear appropriate where traffic was not controlled by automatic signal devices, whether such signals were nonexistent or temporarily out of operation. *
 
 * *»
 
 The Montalbano case, insofar as it seeks to apply the statute where automatic signal devices are installed and “temporarily out of operation”, is in error and to that extent it must be overruled.
 

 Once a municipality has erected a four-sided automatic signal device at an intersection such as this, the provisions of LSA-R.S. 32:237(a) are no longer applicable so long as that device remains visible to an ordinary, observant motorist whether it is functional or not. LSA-R.S. 32:229, 32:247, 32:344, 32:380 (Now 32:41). If the device is operating the motorist has the duty and obligation to heed the signals and a corresponding right to assume that others entering the intersection will do likewise. Should the device become non-operative, as in this case, the duty of an approaching motorist is then to exercise extreme caution at such an intersection and not to proceed therein until he has ascertained that he can negotiate the intersection with safety.
 

 
 *533
 
 This view accords with reasonable standards of conduct under the circumstances. In this case, for instance, both motorists were confronted with a blank traffic signal, but, inasmuch as their respective views of the traffic light were limited to one side, neither could have possibly known whether or not the signal light on the intersecting street was operating. As far as Soprano or Davis knew, the other might have been faced with a blank signal, a green light, or a red light.
 

 As the court of appeal observed in this case, “Certainly the rights and duties of drivers approaching an intersection should not depend upon whether or not their conjecture as to a particular condition is correct or not. We know of no rule of law that grants the driver of a vehicle the right of way where he correctly assumes an existing condition, and denies the same right of way when the assumption is found to be erroneous. Had the signal light facing Davis been green, we would necessarily have to conclude that he had the right of way and that Soprano was negligent in entering the intersection and not yielding the right of way, notwithstanding the fact that the latter had assumed that the signal device was totally inoperative. See: Ohio Casualty Insurance Company v. Marquette Casualty Company, La.App., 140 So.2d 750; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292. We see no reason why a different rule of law should apply simply because Soprano was correct in his assumption where he was faced with the identical traffic situation insofar as he knew.”
 

 In the instant case the view at the intersection was obstructed at the northeast corner by a house and a tree. The streets were wet and, as the facts later revealed, although Soprano was only traveling at 15 to 20 miles per hour, that speed gave his vehicle too much momentum to enable him to stop it within a safe distance under the circumstances. For, when the necessity for stopping became apparent and the brakes were applied, the vehicle skidded and the collision could not be avoided. Because of his limited vision and the wet streets, and particularly because of the non-operating signal device, he should have reduced his speed much more than he did as he approached the intersection, or, he should have stopped before entering the intersection, in order that he might ascertain whether he could negotiate the intersection with safety. Geoghegan v. Greyhound Corp., 226 La. 405, 76 So.2d 412 (1954) ; Lopreore v. New Orleans Public Service, 27 So.2d 737 (La.App.1946).
 

 A non-functioning, four-sided semaphore signal device at an intersection in plain view of an ordinary observant motorist imposes a duty of extreme caution on any
 
 *535
 
 motorist approaching or entering that intersection. To enter such an intersection without slowing down or stopping to ascertain whether the crossing can be negotiated in safety is imprudent and constitutes negligence in legal contemplation.
 

 We find, therefore, that Soprano was negligent in not reducing the speed of his vehicle or stopping to ascertain that the way was clear before entering the intersection ; and his negligence, combined with the negligence of the driver of the other vehicle, was the proximate cause of the .collision and the injuries which ensued.
 

 Another contention involves a procedural objection raised by counsel for the defendant. During the trial plaintiff's counsel called Mr. Soprano on cross-examination under the provisions of Article 1634 of the Code of Civil Procedure, LSA.
 
 [2]
 
 Defendant objected and argued that the insured spouse of the plaintiff was not a “party or his representative” within the meaning of the codal article and for that reason could not be called on cross-examination.
 

 The trial court, although expressing doubt as to its correctness, felt compelled to follow the decision of the Court of Appeal, First Circuit, in the case of Hunter v. United Services Automobile Ass’n, 129 So.2d 908 (La.App.1961) in which that court declared that “ * * * despite the relationship of husband and wife and although the husband was the assured of Defendant, we are of the opinion that Plaintiff, under the statute, was afforded the right to call him for cross-examination * The trial court therefore permitted the husband to be called on cross-examination. The court of appeal affirmed this ruling. This was error and the Hunter case must be overruled in this respect.
 

 It is clear to this court that plaintiff was without any right to call Mr. Soprano on cross-examination. Soprano was not a “party” to the suit; he neither sued, nor was he being sued; he was not an incidental party such as a warrantor, third party plaintiff or defendant, third person intervening or opposing, etc. These are the “parties” we find to be contemplated by
 
 *537
 
 Article 1634. Nor was Soprano a “representative” as used in that article, for he was neither an “officer, agent, or employee having supervision or knowledge of the matter in controversy.” It is true that Mr. Soprano had knowledge of the matter in controversy; but it was not shown that he was an officer, agent or employee of the defendant insurer, and we cannot assume that he was such. New Orleans & N. E. R. Co. v. Redmann, 28 So.2d 303 (La.App.1947). The mere relationship of insured and insurer existing between Mr. Soprano and the defendant, State Farm Mutual, did not constitute him as the “agent” or “representative” of the defendant insurer as contemplated by the codal article.
 

 The purpose of the article is to give litigants the right to examine their opponents under cross-examination, without vouching for the truth of their testimony or becoming bound by their answers. That purpose of the law has not been frustrated here for we doubt seriously that the husband harbored any knowledge of the pertinent facts not known to his wife. They had been happily married for many years and were living together in matrimonial harmony at the time of the trial. If the wife chose to call her husband as a witness under the circumstances of this case she must make him her own witness.
 

 In spite of the error thus committed in permitting the plaintiff to call her husband on cross-examination, we note that, as a matter of fact, none of the advantages supposed to be gained by this action were enjoyed by plaintiff. That is, the plaintiff, for some reason which we cannot reconcile with the ruling permitting the husband to be called on cross-examination, was not permitted by the trial judge to lead the witness as she could ordinarily do under cross-examination and as Article 1634 plainly permits; plaintiff did not seek to impeach the witness’ testimony and the witness was not recalled. By reason thereof plaintiff gained none of the advantages which Article
 
 1634
 
 permits, and, consequently, defendant suffered no disadvantage because the witness was called on cross-examination. Moreover, if the testimony of Mr. Soprano were excluded, we would still reach the same result on the question of his negligence for his testimony adds little which the record does not otherwise support.
 

 One other question remains for our consideration. It concerns the claim of the defendant insurer that the court erred in awarding interest from date of judicial demand because the policy limits the interest recoverable to that which accrues from the date of judgment. Such a policy provision, it is contended, is a contractual limitation of the insurer’s obligation and must be recognized, notwithstanding the provisions of LSA-R.S. 13:4203 to the
 
 *539
 
 effect that “Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, ‘ex delicto’, which may be rendered by any of the courts.”
 

 The issue thus presented was decided by this court in the case of LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245 (1943), where, considering a like contention, the court held that, although the direct action statute at that time (Act 55 of 1930,. now incorporated in LSA-R.S. 22:655) restricted the rights of a plaintiff to the terms and limits of the policy, it also provided that the terms and limits of the policy should not be “in contravention of law.” The court then proceeded to hold that when a policy of insurance provides for interest at a lesser rate, or for a shorter term, than the law fixes, it is in contravention of the law providing that interest shall run from date of judicial demand (Act 206 of 1916, now LSA-R.S. 13:4203). That law, the court held, should prevail over policy provisions to the contrary. This has been the law of Louisiana for more than twenty years. There is no merit in defendant’s contention.
 

 In the application to this court for writs of certiorari and review there was no allegation of error in the judgment of the court of appeal on the issue of quantum. We will not disturb that award.
 

 For the reasons hereinabove assigned, the judgment is affirmed.
 

 [1]
 

 . This statute was in effect at the time of this occurrence, and it provides: “When two vehicles approach or enter an inter- . section at approximately the same time, ■ the driver approaching from the right shall have the right of way. The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of way which he might otherwise have.”
 

 [2]
 

 .
 
 Article 1634 of the Code of Civil Procedure, USA, provides:
 

 “Any party or liis representative may be called as a witness and cross examined by an adverse party without the latter vouching for his credibility, or being precluded from impeaching his testimony. The court may permit the recall and further cross examination of the party or of his representative as often as it ,deems in the interest of justice.
 

 “ 'Representative' as used in the paragraph above and in Article 1428 (2) means an officer, agent, or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time his testimony is taken.”