The TRAVELERS INDEMNITY

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND COMPANIES.

Civ. A. No. 82–3013.

United States District Court,
E.D. Louisiana,
Section A.

June 22, 1983.

Ernest A. Carrere, Jr. and Stanhope B. Denegre, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

Clarence A. Frost of Faris, Ellis, Cutrone & Gilmore, New Orleans, La., for defendant.

## ORDER

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on the motion of plaintiff for partial summary judgment on its claim that it is not liable for any pre-judgment interest on the judgment rendered against J. Ray McDermott, Inc., in the case of *Signal Oil & Gas Company, et al. v. The Barge W–701,* Civil Action No. 70–3491. Following oral argument, and considering the record in this matter and the applicable law, for the reasons hereinafter set out, plaintiff's motion is DENIED.

The undisputed facts from which this dispute has arisen are as follows:

On December 20, 1969, a barge under charter to J. Ray McDermott & Company, Inc. ruptured a pipeline on the Outer Continental Shelf.

A lawsuit was filed in the United States District Court for the Eastern District of Louisiana against J. Ray McDermott & Company, Inc. and other parties by the owners of the pipeline for damages arising from the rupture of the pipeline.

On December 20, 1969, there was in full force and effect a comprehensive liability policy of insurance (No. TRKSLGO 900826–67) issued by the Travelers Indemnity Company to J. Ray McDermott & Company, Inc., with policy limits of $250,000 for the damages at issue.

On December 20, 1969, there was in full force and effect excess insurance coverages for J. Ray McDermott & Company, Inc., severally subscribed to by Certain Underwriters at Lloyd's.

On June 14, 1979, a judgment in the principal amount of $432,829.78, together with 7% interest from the date of the accident and attorneys' fees of McDermott's indemnitee was entered by the District Court against McDermott.

The judgment rendered against McDermott was appealed in the United States Court of Appeals for the Fifth Circuit, which affirmed and amended the judgment of the District Court to award attorneys' fees to the plaintiff, Signal Oil Company.

A petition for writ of certiorari was filed with the United States Supreme Court, which petition was denied and the judgment of the District Court, as amended, became final on February 22, 1982.

After the judgment became final, a dispute arose between McDermott's primary insurer, Travelers, and its excess underwriters, Lloyd's, as to their respective liabilities for costs of appeal and pre-judgment and post-judgment interest on the judgment rendered against McDermott.

Without prejudice, and pursuant to a written stipulation, Travelers and Lloyd's agreed to fund the full judgment against McDermott and arbitrate or litigate between themselves the dispute over appeal costs and interest on the judgment.

On July 20, 1982, the total judgment of $1,042,548.78 against McDermott was satis-

fied. The components of that amount are as follows:

(a) $432,829.78, the principal amount of the judgment;

(b) $382,399.00, being seven (7%) percent interest on the principal amount of the judgment from the date of the accident to the date of satisfaction of the judgment;

(c) $150,000, being attorney's fees to Signal Oil Company; and

(d) $77,356.00, being attorney's fees and costs to Sun Oil Company

Travelers funded $349,829.73 of the judgment and Lloyd's funded $663,276.78.

The issue raised by this motion for partial summary judgment is which insurer owes pre-judgment interest on the limits of the Travelers primary policy, which limits are $250,000. The Travelers contends that it is under no obligation to indemnify McDermott for pre-judgment interest in excess of the limits of its liability policy. Excess underwriters contend that the Travelers owes its pro rata share of the interest on the principal amount of the judgment, that is, pre-judgment interest on $250,000.

Traveler's policy of insurance does not explicitly cover pre-judgment interest. Indeed, its only reference to liability for interest payments is contained in its Supplementary Payments provision, which provides for coverage for "all interest on the entire amount of any judgment herein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon . . ."

The Lloyd's policy provides for coverage for "interest," but not when "included in other valid and collectible insurance."

The issue, then, is whether Travelers' policy implicitly or by law must be held responsible for paying any pre-judgment interest on the limits of its policy. If not, then Lloyd's would have to be responsible for such interest.

Neither party has suggested that there is any parol evidence which would guide the Court in interpreting the meaning of either policy with respect to pre-judgment interest. Indeed, both parties agree that the issue may be resolved by summary judgment.

■ Therefore, the first question to be addressed is what law governs this dispute. Travelers contends that since this matter involves a maritime tort and insurance for marine liabilities, the Court should be guided by federal admiralty law. As the United States Supreme Court held in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), where there is a judicially-established federal admiralty rule on the issue, the court should look to that rule, and not to the state jurisprudence, to resolve the matter.

■ Neither of the two cases cited by Travelers, nor any other cases discovered by this Court, however, establish a federal admiralty rule on the issue involved in this matter. In *Offshore Logistics v. Arkwright-Boston Mfrs. Mut. Ins. Co.*, 639 F.2d 1142 (5th Cir.1981), the Fifth Circuit found the terms of the policy controlling, and, in fact, affirmed the imposition of statutory penalties and attorney's fees under Louisiana law.

Similarly, in *Alcoa Steamship Co. v. Charles Ferran & Co., Inc.*, 443 F.2d 250 (5th Cir.1971), the Fifth Circuit again looked to the intent of the insurers and the wording of the primary and excess insurers, and specifically stated, at p. 255:

But we do not make this as a choice of law for general (or Louisiana) application. We do it in the context of this situation in which the insurance was a carefully dovetailed, integrated program in which each had significant interest at stake, often regardless of the ultimate outcome of a potential claim . . .

In this instance, then, there is no established federal admiralty rule, and under the holding of *Wilburn Boat,* therefore, this Court must, as in the *Wilburn Boat* case itself, look to appropriate state law for guidance.

■ On this issue, Louisiana jurisprudence is well-established. Although Traveler's policy provides for interest only from "entry of judgment" until paid, the Supreme Court of Louisiana has held that such provision limiting interest must fail as in contravention of a Louisiana statute (LSA–R.S. 13:4203) which provides for interest on tort judgments from date of judicial demand. *Soprano v. State Farm Mutual Automobile Ins. Co.,* 246 La. 524, 165 So.2d 308 (1964); *LeBlanc v. New Amsterdam Casualty Co.,* 202 La. 857, 13 So.2d 245 (1943).[1]

Travelers argues that these holdings, and those of the lower courts which follow them, arise only in the context of suits under the Louisiana Direct Action Statute, which explicitly provides that Louisiana-connected policies may not contain provisions "in violation of the laws of this State." LSA–R.S. 22:655. This case having not arisen under the Direct Action Statute, Travelers contends that the holdings in the above-cited cases do not apply.

However, a careful reading of the cases, and the abundance of lower court cases which follow them, makes clear that the basis for these holdings is not the Direct Action statute, but rather the Louisiana statute providing that interest in tort judgments shall run from before the entry of judgment. Regardless of the language or applicability of the Direct Action statute, a Louisiana policy of insurance which provides for interest only from date of judgment contravenes Louisiana law and cannot be permitted. See also *Doty v. Central Mutual Insurance Co.,* 186 So.2d 328 (La. App. 3rd Cir.1966), writ refused, 187 So.2d 451; *Glazer v. Louisiana Trailer Sales, Inc.,* 313 So.2d 266 (La.App. 4th Cir.1975), writ refused, 318 So.2d 47; *Travelers Indem. Co.*

*v. Reserve Ins. Co.,* 364 So.2d 1041 (La.App. 1st Cir.1978).

■ Moreover, this well-established rule of Louisiana law is not altered simply because there was an excess insurance policy in effect. As stated by the court in *Richardson v. Tate,* 269 So.2d 278, 283 (La.App. 4th Cir.1972), with regard to a similar claim against an excess insurer: "As an excess insurer it cannot be held liable for that part of the interest (or any other liability) for which Moore's [primary] insurer is liable." Indeed, the Lloyd's policy states as much, and Lloyd's is entitled in drawing up its policy to rely upon the settled Louisiana jurisprudence that a primary insurer is liable for pre-judgment interest on its pro rata share.

Accordingly, the motion of the plaintiff for partial summary judgment is DENIED.

---

1. Although the trial judge in the case which formed the basis of this action awarded interest from date of loss, instead of date of judicial demand, that award has become final and unappealable, even if incorrect. More probably, however, it was within the discretion of the trial judge, as "interest from the date of loss has long been allowed, of course, in admiralty for property loss." *National Airlines, Inc. v. Stiles,* 268 F.2d 400 (5th Cir.1959). In any case, whichever the starting date, insurance provisions limiting interest to the post-judgment period are in contravention of Louisiana law, under the decisions of the Supreme Court of the state.