653 So.2d 1351 (1995)
Maurice Dale THOMPSON
v.
CHEVRON U.S.A., INC. and Scotty N. Sumney.
No. 94 CA 1107.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
Writ Denied June 23, 1995.
*1352 Boris Navratil and Andre Bourgeois, Baton Rouge, for plaintiffs-appellants Maurice Dale Thompson, Camilla Thompson.
John M. Parker and David Shelby, Baton Rouge, for defendants-appellees Chevron USA, Inc., Scotty N. Sumney.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
This litigation arises as a result of an intersectional collision between the plaintiff and a left-turning motorist. The trial jury absolved defendants of any responsibility for this accident, and the trial judge entered judgment in favor of defendants for the stipulated amount of their reconventional demand. Plaintiffs have appealed.

FACTS
Maurice Dale Thompson filed this suit seeking to recover damages for injuries allegedly sustained by him as a result of a collision between his car and a pickup truck owned by Chevron U.S.A. and operated by Chevron's employee, Scotty N. Sumney. Mr. Thompson's wife, Camilla, joined her husband as a plaintiff in this matter seeking compensation for her alleged loss of consortium. Chevron answered plaintiffs' lawsuit denying any fault on the part of its employee, and reconvened for $2,790.45 which sum represents the repair costs of its vehicle.
The accident in question occurred on the morning of August 27, 1992, on South Sherwood Forest Boulevard, a major four-lane traffic artery in Baton Rouge, Louisiana. At the time of the accident, the electric traffic signal at the intersection of Sherwood Forest and Interstate 12 was inoperable due to a power outage resulting from Hurricane Andrew having passed through the area the evening before.
Mr. Thompson, who was proceeding in a southerly direction on Sherwood Forest, contends that just prior to the accident, traffic was moving through the intersection without stopping, when Mr. Sumney, who was stopped in an opposing left-turn lane, suddenly turned left in front of him making the collision inevitable. Conversely, defendants assert that at the time of the accident, traffic was heavy, and because the traffic lights were not operating, motorists were proceeding through the intersection in a "stop and go" fashion. Defendants further allege that Thompson proceeded through the intersection without slowing down in complete disregard of the inoperative traffic light.
The twelve-member jury unanimously found defendants free from fault and assigned 100% of the fault to Mr. Thompson. Based on this verdict, the trial judge entered judgment in favor of Chevron for $2,790.45, the stipulated amount of its reconventional demand.

ASSIGNMENTS OF ERROR
Mr. and Mrs. Thompson have taken a devolutive appeal from the judgment of the *1353 trial court, and urge four assignments of error:
(1) The trial judge erred in concluding that at an intersection where electric semaphore signals are inoperative, rules concerning the duty of care incumbent on left-turning motorists are inapplicable.
(2) The trial judge erred in instructing the jury as to a provision of the Baton Rouge City Code which relates to inoperative traffic signals, and failing to instruct the jury on other provisions of the City Code which require a left-turning motorist to exercise caution even when proceeding under the direction of an illuminated green signal arrow.
(3) The trial judge erred in refusing to charge the jury consistent with holdings of the Louisiana Supreme Court as to the duties imposed on a left-turning motorist, and said motorist's duty to exercise caution even while turning under the authority of an illuminated left-turn signal.
(4) The jury verdict which exonerated defendants of all liability is erroneous.
In the event this court should find reversible error in the findings of the trial court, Mr. and Mrs. Thompson further urge this court to address the issue of damages, de novo, on appeal.

I.
In their first assignment of error, plaintiffs assert that the trial judge erred in concluding that at an intersection at which electric semaphore signals are inoperative, rules concerning the duty of care incumbent on left-turning motorists are inapplicable.
Generally, the duty of motorists entering uncontrolled intersections is governed by La. R.S. 32:121. This statute provides that the driver of a vehicle on the left, shall yield the right of way to the vehicle on the right. Additionally, La.R.S. 32:122 places a high degree of care on left-turning vehicles, and mandates that a left-turning driver yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close as to constitute an immediate hazard.
In Soprano v. State Farm Mutual Automobile Insurance Company, 246 La. 524,165 So.2d 308 (La.1964), however, the Louisiana Supreme Court held that the statutory right of way granted by La.R.S. 32:121 is inapplicable where a three phase, four-sided semaphore traffic signal is in place, but temporarily out of order. Under these circumstances, the court delineated the rights and duties of the parties as follows:
A non-functioning, four-sided semaphore signal device at an intersection in plain view of an ordinary observant motorist imposes a duty of extreme caution on any motorist approaching or entering that intersection. To enter such an intersection without slowing down or stopping to ascertain whether the crossing can be negotiated in safety is imprudent and constitutes negligence in legal contemplation.
Id. at 312.
The Fourth Circuit, in Orazio v. Durel, 407 So.2d 75 (La.App. 4th Cir.1981), and later, the Fifth Circuit in Rico v. Vangundy, 461 So.2d 458 (La.App. 5th Cir.1984), followed the supreme court's rationale in Soprano, and held that a left-turning motorist's duty under La.R.S. 32:122 to yield the right of way at an intersection was inapplicable where semaphore signal devices were in place, but not functioning.[1] Both courts elected instead to apply the standard of care set forth in Soprano to the facts presented.
While this particular issue has never been squarely addressed in the First Circuit[2], *1354 we agree with the conclusion reached by the Fourth and Fifth Circuits, and accordingly hold that where an electric semaphore traffic signal is in place, but temporarily out of order, the duty to yield imposed upon a left-turning motorist under La.R.S. 32:122 is inapplicable, and any motorist approaching or entering such an intersection is required to exercise extreme caution. Consequently, we cannot say that the trial judge erred in reaching a similar conclusion.

II.
The second assignment of error raised by plaintiffs is that the jury charges given by the trial judge were either erroneous or incomplete. Mr. and Mrs. Thompson point out that while the trial judge instructed the jury as to a Baton Rouge ordinance which requires motorists to stop at inoperable traffic lights, the charge failed to include another provision of the same ordinance which states that a motorist who makes a left-turn pursuant to an illuminated left-turn signal must nevertheless exercise caution. Plaintiffs further argue that if a motorist is required to proceed with caution when a left-turn signal is illuminated, the same standard should be applied when the signal is not illuminated.
Upon our review of this matter, we note that the court need only give those jury instructions which fairly and reasonably point up issues, and which provide correct principles of law for the jury to apply to those issues. Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848 (La.App. 1st Cir. 6/24/94); 638 So.2d 1168, 1173.
It is the judge's responsibility to reduce the possibility of confusing the jury, and he(she) may exercise the right to decide what law is applicable. Daigle v. Legendre, 619 So.2d 836, 839 (La.App. 1st Cir.), writ denied, 625 So.2d 1040 (La.1993).
Additionally, an appellate court must exercise great restraint before overturning a jury verdict on a suggestion that jury instructions were so erroneous as to be prejudicial. Id.at 839.
In charging the jury, the trial judge stated:
[T]he duty of extreme caution is imposed upon motorist (sic) approaching intersections with nonoperative traffic lights. A motorist approaching a traffic signal which does not have any signal lens illuminated, shall come to a full and complete stop before entering the intersection, and shall proceed through the intersection only after being sure it is safe to do so.
Because the Baton Rouge municipal ordinance requiring motorists to come to a full and complete stop before entering an intersection controlled by an inoperative traffic signal is applicable in this situation, it was proper for the trial judge to incorporate this language into her jury charge.
We do not believe that the trial judge erred in excluding from the charge other provisions of the same statute relating to the duty of care imposed on left-turning motorists at intersections with functioning traffic lights. Because that situation is not applicable to the facts in this case, such instruction would have only increased the risk of confusing the jury.
For the foregoing reasons, plaintiffs' second assignment of error is without merit.

III.
Plaintiffs further contend that the trial judge erred in refusing to charge the jury in line with principles set forth by the Louisiana Supreme Court in Miller v. Leonard, 588 So.2d 79 (La.1991), concerning the duties incumbent upon a left-turning motorist, as well as the principle enunciated in Strickland v. Pitts, 506 So.2d 1360 (La.App. 2nd Cir.1987); Tipton v. Menard, 467 So.2d 126 (La.App. 3rd Cir.1985); and Foreman v. State Farm Mutual Automobile Insurance, 416 So.2d *1355 258 (La.App. 3rd Cir.1982), concerning the left-turning motorist's duty to exercise caution even when making the turn on the authority of an illuminated left-turn signal.
While this is essentially the same argument that plaintiffs raised in their second assignment of error, we will, nevertheless, examine the cases cited to determine whether plaintiffs could have been adversely affected as a result of this exclusion.
The cases relied upon by plaintiffs recite the general law of this state which requires that the driver of a vehicle intending to turn left within an intersection yield to oncoming vehicles which are so close as to constitute an immediate hazard. La.R.S. 32:122; Miller, 588 So.2d at 82; Foreman, 416 So.2d at 260. A left-turning motorist is further required to exercise a very high degree of care, even where the motorist executes his turn on the authority of an illuminated left turn signal. Miller, 588 So.2d at 82; Strickland, 506 So.2d at 1363; Tipton, 467 So.2d at 128; Foreman, 416 So.2d at 260. Such a left-turning motorist, when involved in a collision, bears the burden of absolving himself of liability for the accident. Miller, 588 So.2d at 82; Strickland, 506 So.2d at 1363; Tipton, 467 So.2d at 128; Foreman, 416 So.2d at 260. This burden of proof applies to the turning motorist whether or not the intersection is controlled by semaphore lights, including a left-turn signal. Strickland, 506 So.2d at 1363; Tipton, 467 So.2d at 128; Foreman, 416 So.2d at 260. If the left-turn motorist is faced with a green arrow left-turn signal, he must prove that he was making such turn while the arrow was green, or that he had pre-empted the intersection. Strickland, 506 So.2d at 1363; Tipton, 467 So.2d at 128; Foreman, 416 So.2d at 260.
Upon application of these principles to the facts presently before us, we note that for the reasons stated previously, the left-turning motorist's duty to yield under La.R.S. 32:122 is inapplicable where the intersection is controlled by an inoperative traffic signal. Under the Soprano rationale, as applied in Orazio and Rico, any motorist approaching such an intersection is required to utilize a high degree of caution; the language of the Baton Rouge ordinance further imposes a duty on said motorists to come to a "full and complete stop" before entering the intersection. It is undisputed that plaintiff did not come to a stop at the intersection.
We find that the charge given by the trial judge is clearly reflective of the law on this point.[3] Accordingly, plaintiffs third assignment of error lacks merit.

IV.
Plaintiffs' final assignment of error is that the unanimous jury verdict which absolved defendant, Scotty Sumney, of all liability for this accident is erroneous.
At the trial of this matter, both parties testified that the traffic signal which normally regulated the flow of traffic at the intersection of South Sherwood Forest Boulevard and the Interstate 12 access ramps was inoperable at the time of the accident.
Scotty Sumney, the driver of the Chevron truck involved in this accident, testified that on the morning after the hurricane, there was a lot of traffic on South Sherwood Forest Boulevard. Prior to reaching the intersection where the accident occurred, he encountered two other intersections with inoperable traffic signals where motorists stopped and awaited their turn to proceed as if at a four-way stop.
After entering the northbound left turn lane at the Interstate 12 intersection, Sumney waited with his turn signal on, behind several other vehicles. When he reached the intersection itself, Mr. Sumney testified that he came to a complete stop, and after making eye contact with other drivers at the intersection, eased his vehicle out and began his turn.
*1356 Upon entering the intersection, Sumney stated that he stopped a second time, blocking the inside southbound lane, as traffic in that lane obscured his view of the outside southbound lane. After observing no oncoming traffic in that lane, Sumney again proceeded across the intersection. He testified that he had almost completely cleared the intersection when he observed some movement out of the corner of his eye; however, he was unable to avoid the accident. The plaintiff's vehicle struck the pick-up truck operated by Sumney near the right rear wheel.
At the time of the accident, Mr. Sumney was accompanied by a fellow Chevron employee, Danny McClure, who corroborated Sumney's testimony concerning the accident.
Plaintiff, Maurice Thompson, disputed defendant's version of how the accident occurred, and testified that on the morning after the hurricane, there was very little traffic on Sherwood Forest Boulevard. He had left his home on South Flannery Road a short while earlier, and travelled through four intersections with inoperable traffic signals, treating each as if it were a four-way stop. Mr. Thompson stated that while he observed the non-functioning light at the intersection where the accident occurred, he did not stop because it appeared to him that other traffic was proceeding through the light without stopping; Thompson assumed traffic was not stopping because the intersecting roadway was an interstate ramp.[4]
Additionally, Mr. Thompson stated that while he saw Mr. Sumney's vehicle in the opposing turn lane with its turn signal flashing prior to the accident, by the time he realized Sumney was going to proceed through the intersection, he was unable to stop his vehicle from colliding with the right rear tire of Sumney's truck.
Both sides presented expert testimony as to how the accident may have occurred, but ultimately, the trial jury determined that defendants Scotty Sumney and Chevron U.S.A. were free from fault, and that plaintiff Maurice Thompson was solely responsible for this accident.
The jury in reaching this determination, must have concluded that Thompson, by proceeding through the inoperable light without stopping or reducing the speed of his vehicle, failed to comply with the Baton Rouge ordinance, and breached his duty of extreme caution required under the Soprano rationale, as applied in Orazio and Rico. We find no error in this determination.
Therefore, for the reasons stated above, the judgment of the trial court is affirmed at plaintiff-appellants' costs.
AFFIRMED.
NOTES
[1] The Third Circuit, in Gibson v. Fisher, 401 So.2d 565 (La.App. 3rd Cir.1981), resolved a similar case on the basis of La.R.S. 32:122 and the jurisprudence interpreting the statute, as opposed to applying the Soprano standard; however, the Gibson case is distinguishable on its facts as it involved a functioning traffic light.
[2] Though not involving a left-turning motorist, the First Circuit held in Gaudet v. Louisiana Department of Highways, 432 So.2d 867 (La.App. 1st Cir.1982), (on rehearing), that the Soprano duty of extreme caution is imposed upon a motorist approaching an intersection with a non-operative traffic light.
[3] Whether or not as between two motorists, each exercising a high degree of caution in approaching an inoperable light, the left-turning motorist can be held to an even higher standard of care because of his intention to turn left, is not the issue posed by the facts of this case.
[4] Plaintiffs argue that the juncture of two interstate ramps with a four-lane traffic artery does not constitute an "intersection", and that for this reason, the ordinance requiring motorists to stop should not apply. We find this argument to be without merit as the language of the ordinance requires motorists to stop at an inoperable traffic signal, regardless of the configuration of the intersection.