11 SAUNDERS, Judge.
An eighteen-wheeler collided with a bus transporting handicapped students it sought to pass on I — 10 East between Lafayette and Crowley, Louisiana. Suits were filed by the driver and a passenger of the bus. The jury found the driver of the truck 100% hable for the accident.
Only quantum issues have been appealed. The bus driver-owner argues that the jury’s failure to award any property damages for the repairs of his school bus and failure to award any future medical expenses for his continuing TMJ problems were manifestly erroneous. Additionally, both he and the minor, Patrick Benoit, Jr., claim that their general damage awards were too low.
laAfter reviewing the record, we amend the judgment to Robert D. LeBlanc to include property damages of $5,869.59 and general damages of $75,000.00, plus future medical expenses of $3,500.00. As to minor Patrick Benoit, Jr., we affirm.

FACTS

The accident occurred April 19, 1991, at 6:45 a.m. Defendant, Randall Hughes, was operating a 1986 Peterbilt Tractor, pulling a trailer east on 1-10 near Crowley. Robert LeBlanc was operating a 1981 Chevrolet school bus. When Hughes sought to pull into the left lane to pass the school bus before him, he misjudged the speed of the school bus, striking its left rear corner. At the time of the accident, the school bus was driving within legal limits at approximately *1065 52 miles per hour in a 65 mile per hour speed zone. The eighteen-wheeler was travelling between 65 and 70 miles per hour.
The sole issues on appeal concern quantum. After finding Hughes 100% liable, the jury awarded the injured bus driver approximately $8,000.00 for past medical bills, plus general damages of $15,000.00 for difficulties caused by his TMJ and compressed C-6 nerve and related symptoms. It refused to award the bus driver-owner any property damages or future medicals related to his TMJ. Finally, a minor occupant of the school bus, Patrick Benoit, Jr., was awarded $963.00 for past medical bills and $2,500.00 in general damages for his soft tissue injuries and associated headaches and dizziness.
Plaintiffs believe they are entitled to more. The items disputed by plaintiffs are set forth separately below.
I sROBERT LeBLANC

Property Damages:

Robert LeBlanc maintains that the jury clearly erred in failing to offer any property damages at all. Defendants counter that assertion, noting that Mr. LeBlanc had the burden of showing not only the damages to plaintiff’s vehicle, but causation by a preponderance of the evidence. Dabog v. Deris, 625 So.2d 492 (La.1993).
After the accident occurred, Robert Le-Blane brought the bus to R.J.’s Trucking in Lafayette. Its owner, R.J. Arceneaux, Jr., testified by video deposition that he has been involved in the automobile and truck repair business since 1948 and that his concern performs some 1,500 collision repairs in a given year to automobiles, trucks, recreational vehicles, and buses, much of it for insurance companies. Of that number, he estimates that his company repairs buses some 15 to 20 times a year, mostly for the Lafayette and St. Landry Parish School Boards. This work on buses includes suspension, engine, transmission, body work, and electrical.
Mr. Arceneaux specifically recalled personally making an estimate for Mr. LeBlanc May 7, 1991. His estimates were derived from listing repairs he deemed essential for the bus, using “flat rate books” to estimate the amount of time required, multiplying it by the labor costs, and adding 7.5% local taxes. Doing so, he arrived at total costs for parts and labor of $8,637.33, or $9,285.12 after adding $647.79 in taxes.
LSA-C.C. art. 2315 provides:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
* * * ⅜ * *
| Consequently, plaintiff is certainly entitled to relief for any property damages caused by defendant’s negligence.
Having reviewed all of the evidence on the subject, it is clear that the jury erred in refusing to award plaintiff, Robert Le-Blanc, any property damage at all, solely on the basis of the expert’s admission that some, but not all, of the property damages were not related to the accident. Plaintiff is clearly entitled to all property damages undoubtedly caused by defendant’s negligence. For instance, the expert clearly attributed to the collision the motor’s internal knocking, the bus’s bent frame, and accessory repairs related to both. The cost of the long block engine repair was $1,291.00, plus $238.00 to replace two exhaust manifolds that were knocked off by the accident, plus $112.40 for gaskets, oil and coolant that would need to be replaced when the engine was reinstalled. The left rear lower panel on the back of the bus could be replaced for $280.19, the rear bumper repaired for $351.70, and rivets and caulking would be an additional $70.00. The expert also attributed to the accident the need to align the front end of the bus and the replacement of two U-joints ($63.00), six exhaust pipe clamps ($12.00), and $70.00 for leaks to the radiator caused by the effects of the impact on its fan. None of these charges were disputed and no evidence was introduced to refute plaintiff’s case as to them.
Of course, this does not mean that the jury erred in refusing to award property damages for all of the used bus’s imperfections, including those not caused by the accident. As examples, Mr. Arceneaux did not attribute to the accident the bus’s need for an oil pump ($90.15), exhaust crossover pipe ($81.12), *1066 muffler ($90.53), tailpipe from muffler to the | shack of the bus ($126.44). Finally, the expert admitted that although he had estimated $684.00 would be required to paint the whole bus, he indicated that only $72.00 would be necessary to repaint the rear portion of the bus that was affected by the accident.
Labor costs associated with the accident total $1,500.00. Finally costs associated with realigning the bus’s bent frame total $1,400.00.
Each of the parties concurred as to the occurrence of the accident, and both Mr. LeBlanc and Mr. Arceneaux described the property damages that flowed directly from the accident. Defendants in no way rebutted Mr. LeBlanc’s case, except to the extent that they had Mr. Arceneaux delineate which repairs were necessary and accident-adduced, from those which were not. Mr. Arceneaux readily complied with these requests.
To the extent that the jury failed to award any property damages whatsoever when some were clearly attributable to the accident, it clearly erred, even under the exacting scrutiny articulated in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); and Canter v. Koehring, 283 So.2d 716 (La.1973).

Adjudicating quantum need not be an all or nothing game.

In light of the clear preponderance of the testimony, the jury was clearly wrong in failing to award property damages of even those items undoubtedly caused by the accident. These items, totalled, come to $5,460.09 plus taxes of $409.50 (7½%), for a total of $5,869.59, which we render presently.
| (PERSONAL INJURIES
Next, Robert LeBlanc complains that the jury’s award of $15,000.00 general damages for his injuries was inadequate. He believes that $125,000.00 is the minimum reasonable quantum under the circumstances. Defendants counter that the jury’s award was reasonable, representing an effort to secure a middle ground between the exorbitant damages plaintiff sought at trial and defendant’s theory that plaintiff, in fact, sustained no injury at all.
Plaintiffs principal complaints concern TMJ injuries and a pinched nerve which, for purposes of clarity, we will address separately.

TMJ:

At trial on September 29, 1993, plaintiff indicated that he had never before been involved in a rear-end collision and had no previous difficulty with chewing. He indicated that after the accident he suffered from a headache on the right side down into his neck and an earache. By the next day, the headaches “moved down into my neck ... down into my biceps all the way down into my right hand, and that was like a stinging, burning.” (The morning after the accident, he had trouble moving his jaw. At the time, he thought this difficulty was somehow caused by his swollen right ear.) One week later, his symptoms had become worse, particularly the pains in his jaw which prevented him from talking or opening his mouth very wide.
For his injuries, he first saw Dr. Menard, a family doctor.[1] Thereafter, he saw orthopedic and dental specialists. For his TMJ complaints, plaintiff saw Dr. James Pearce, a dentist whose practice is 17limited to the diagnosis, treatment, and management of patients with temporomandibular disorders.
Dr. Pearce, testifying by deposition, indicated that he usually has about 100 patients in treatment at a time and that their treatment periods usually run from three to six months, with surgery required for one to four patients a year. According to Dr. Pearce, when he first saw Robert LeBlanc on June 13, 1991, the patient indicated that he had been suffering from right side temporal headaches and mandibular or radicular pains.[2] Dr. Pearce diagnosed a displaced *1067 disc of the right temporal mandibular joint, located in the area just before the ear where the jaw hinges to the skull, which he observed objectively by the sight and feel of the jaws popping. Dr. Pearce recommended the removal of one tooth and a complete evaluation of plaintiffs jaw by x-ray, impressions of his teeth, a PT evaluation and an EMG for the next visit.
When plaintiff returned to see Dr. Pearce October 15, 1991, the examination was performed. Plaintiffs medical history was identical as to the pains of the right side of his face and headaches. Plaintiff complained that his upper and lower teeth did not fit together, that he was frequently awakened in the early morning hours by headaches, possibly caused by clinching and grinding of his teeth. Plaintiffs complaints, consistent with the objective findings of an EMG scan, corroborated Dr. Pearce’s findings of increased muscle hyperactivity in the facial and head muscles, spasms, restricted and painful opening of the Ismouth. To combat these maladies, plaintiff was recommended to isometrically work the affected parts of his body.
According to Dr. Pearce, plaintiff was predisposed to having TMJ problems due to the formation of his jaws and missing right molars in the back of his mouth, but the accident precipitated his troubles. Before the accident, Robert LeBlanc was free of cervical pain, right jaw pain, headaches, or teeth grinding, and it was more probable than not that the trauma of the rear-end collision of April 19,1991, precipitated his TMJ disorder and a displaced disc in his jaw. The only relief short of major TMJ surgery which Dr. Pearce could find for plaintiff was splints, which Dr. Pearce prescribed. In the course of the dentist’s treatment of plaintiff through July 26, 1993, it had become clear that plaintiff was relieved of his pains when he wore the splints continuously, removing them only to dine, a conservative accommodation to which plaintiff would have to grow accustomed.
On cross-examination, defendants sought to make an issue of Mr. LeBlanc’s not seeking formal medical attention for a week and a half post-accident. On defendants’ questioning, Mr. LeBlanc indicated that immediately following the accident, he told the officer at the scene that he was not injured because he did not think he was. (He also indicated that, even if he was injured, he could not have ignored his responsibilities for the bus and children.) He further indicated that he worked to repair the bus over the weekend, notwithstanding his great pains, because otherwise the children would have no ride to school Monday, only three days later. Plaintiff further conceded that he did not see the doctor until eleven days after the accident, and that his complaints to a claims | sadjuster only four days after the accident were probably only limited to a probable pinched nerve which was thought to be getting better.[3]
Our exhaustive review of the record indicates that plaintiff suffers from a TMJ disorder that will require him to wear a splint in his mouth for the foreseeable future, possibly for the rest of his life, unless he undergoes a major operation. The jury only awarded Mr. LeBlanc $15,000.00 general damages, a sum we find inadequate considering the everyday difficulties he will have to endure indefinitely.

Pinched Nerve:

In addition to TMJ troubles, defendant’s negligence wrought upon Mr. LeBlanc the painful and partially debilitating effects of a pinched nerve through at least January 31, 1992. While plaintiff saw Dr. Pearce for his TMJ problem, he saw an orthopedic specialist for his pinched nerve. Plaintiff first saw board certified orthopedic surgeon, John E. Cobb, M.D., June 10, 1991, with complaints of neck pains that persisted beyond his visit with his family doctor. Plaintiff related to Dr. Cobb his continuing pains in his neck and right side of his face and jaw, the latter being *1068 most pronounced when eating. Plaintiff also complained of right headaches, a painful right arm, and of a shooting pain from his neck to his hand.
After conducting an examination, Dr. Cobb’s impression was that the 35 year old’s neck pain was a product of the accident and that his condition included a myofascial injury and an aggravation by the accident hoto plaintiffs spondylosis causing compression of the C-6 nerve midway in the neck on the right side. Dr. Cobb suspected this C-6 nerve involvement caused the pains to plaintiffs hand, in addition to decreased reflexes.
In light of his observations, Dr. Cobb recommended plaintiff begin physical therapy, including reconditioning and intermittent cervical traction. Plaintiff saw Ted Brous-sard, a licensed physical therapist with Crowley Physical Therapy Clinic. No relief forthcoming, plaintiff returned to see Dr. Cobb August 12,' 1991. Pains continued to radiate from the neck through his shoulder and down his arm into his right hand. After a negative cervical MRI ruled out a ruptured disc, Dr. Cobb focused on a probable pinched nerve and soft tissue injury.
By January 31, 1992, plaintiff was feeling better. Dr. Cobb did not recommend cervical surgery, possibly owing to plaintiffs degenerative spondylosis of the spine. On cross-examination, Dr. Cobb indicated that the films showed that LeBlanc did indeed suffer from a pinched nerve in his neck, but it was inoperable and the joint product of the collision and a congenitally produced small spinal canal. Instead, Dr. Cobb recommended that Robert LeBlanc continue on a self-directed program of home conditioning to increase strength and range of motion of his neck and shoulders.
Dr. Cobb indicated that the symptoms of a pinched nerve had abated somewhat by the time of his last visit with plaintiff on January 31, 1992, but that plaintiff was still feeling some soreness from the accident. Dr. Cobb did not perform any additional tests to isolate plaintiffs nerve impingement because plaintiffs condition was improving and he was of | nthe opinion that there would be no need to operate. He would have ordered a myelogram and a CT scan if an operation had been called for.
Dr. Cobb testified that plaintiffs headaches were probably attributable to a combination of plaintiffs TMJ and cervical problems, both of which were asymptomatic before the accident. Dr. Cobb flatly rejected defense counsel’s request that he state that plaintiffs C-6 nerve impingement was caused by plaintiffs spondylosis and not by the accident; to the contrary, Dr. Cobb’s opinion was that the accident did cause plaintiffs symptoms.

Mr. LeBlanc’s Quantum

Although the pain radiating to his hand had abated, plaintiff testified that his jaw ache, headache and teeth grinding continued through date of trial, as did his neck pains.
Mr. LeBlanc also described his difficulty eating. He testified that he could no longer eat steak, fried chicken, pizza, or chew gum. Additionally, he was concerned that he was embarrassing to be with and related difficulties in sleeping several times a week and constantly uncomfortable due to his persistent headaches.
The jury awarded Mr. LeBlanc $15,000.00 general damages for his injuries, which, without question, include a pinched nerve and attending pains and discomfort for more than nine months, TMJ problems which, to alleviate, would require plaintiff to wear splints for the foreseeable future for the thirty-four year old high school graduate and contract bus driver.
Under the circumstances, we believe that the lowest reasonable general damages award that could be granted plaintiff, Robert LeBlanc, for 112general damages is $75,000.00 plus medical specials. This sum should be sufficient to take care of the difficulties plaintiff has had and will have with the requirement that he wear splints well into the indefinite future.
In addition, plaintiff is entitled to recover reasonable medical expense, past and future, attributable to defendant’s negligence. LSA-C.C. art. 2315. The jury awarded plaintiff damages for past medicals.
*1069 No one appealed that award, which is definitive.
However, plaintiff does dispute the jury’s refusal to award him future medicals which, if proven, he would clearly be entitled to even though they by their nature cannot be fixed with precision. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984).
Mr. LeBlanc maintains that Dr. Pearce stated that the cost of his future medicals would run in the neighborhood of $14,500.00. Although the bulk of this figure was estimated as necessary for a surgery plaintiff would like to have but for which defendants is not responsible, Dr. Pearce’s lower estimate of $3,500.00 for plaintiffs prospective orthodontic expenses, although not precise, represents the lowest reasonable award to which plaintiff is entitled and for which he produced evidence at trial.[4] Although surgery would be ideal insofar as it would correct the imperfections in plaintiffs jaw, Dr. Pearce believed the splint would suffice to restore Mr. LeBlanc’s condition to what it was preaccident.
I PATRICK BENOIT
Next, we turn to the appeal by the administrators for the estate of the minor child, Patrick Benoit, Jr., that the jury’s award of $2,500.00 in general damages, plus special damages, was clearly wrong.
Patrick was a passenger in the bus which was rear-ended April 19, 1991. According to his mother, Patrick suffered headaches, dizzy spells and sporadic displays of nausea. At first, his headaches came about twice a month, about half as frequently by the date of trial.
Additionally, Patrick Benoit was called to testify via court-provided interpreter. Through an interpreter, Patrick testified that he was on the bus when it was hit, that his neck hurt after the accident and that he had suffered headaches about once a month, in addition to occasional nausea. (He indicated that his neck did not hurt at trial.)
Dr. Reyes, a general surgeon since 1955, testified by video deposition. Dr. Reyes noted Patrick’s primary complaints were of headaches, dizziness, neck and back pains. The eleven year old had a normal body type and posture. A thorough examination of his back and neck showed no evidence of stiffness and he displayed full range of motion. Nonetheless, due to the history received from the patient (actually his father), the minor was diagnosed as having cervical and lumbosacral sprains and headaches and advised to take Tylenol for pain as needed. In addition, the parents gave the child hot baths and back massages.
Following the September 11, 1991, visit to Dr. Reyes, plaintiff returned October 16, 1991 and October 30, 1991. Occasional eom-plaints luof pain were noted. Plaintiff was discharged November 13, 1991, with no continuing complaints.
The jury awarded Patrick Benoit $2,500.00 general damages, plus medical specials. After reviewing the record, we discern no error in the jury’s award. Although we might have weighted the evidence on the issue of quantum differently, the jury’s award cannot be said to be entirely unreasonable under the circumstances. See Stobart v. State, 617 So.2d 880, 882-83 (La.1993). Dr. Reyes conceded that he could find no objective manifestations of the injuries reported by the minor’s parents, and even the most expansive interpretation of Patrick’s injuries reveal only infrequent discomforts.

DECREE

For the foregoing reasons, plaintiff, Robert D. LeBlanc’s, award is amended to include $5,869.59 for property damages, and $75,-000.00 for general damages and $3,500.00 future medical expenses for the temporary discomforts caused by his pinched cervical nerve and more protracted TMJ disorder. The jury’s refusal to award future medical expenses for Mr. LeBlanc’s surgery is affirmed, as is the general damage award to minor Patrick Benoit, Jr. of $2,500.00 and *1070 awards for past medical expenses to both parties. Plaintiffs are also entitled to interest from date of judicial demand. Costs taxed to defendants.
AFFIRMED IN PART, AS AMENDED; REVERSED IN PART; AND RENDERED.

. The record does not disclose Dr. Menard's first name.

. Temporal headaches are caused by spasmodic chewing ("temporalis”) muscles. Mandibular or radicular pains are pains of the jaw in front of and in the area of the ear.

. Plaintiffs explanation as to the delay in his seeking treatment was not unusual, at least to one of plaintiffs treating physicians. In response to their implication that plaintiff waited suspiciously long before seeking medical treatment, Dr. John Cobb acknowledged nothing unusual about plaintiffs not having gone to the emergency room immediately following the accident, in waiting eleven days before seeking any professional medical attention, or in waiting six weeks before seeing him.

. Awards for future medical expenses must be based upon medical testimony, and mere speculation is an insufficient basis for such an award. See Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3d Cir.1990).