782 So.2d 1104 (2001)
Karen KING, Plaintiff-Appellee
v.
ILLINOIS NATIONAL INSURANCE COMPANY, Defendant-Appellant.
No. 34,473-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
Rehearings Denied March 29, 2001.
*1106 Lunn, Irion, Salley, Carlisle & Gardner by James A. Mijalis, Shreveport, Counsel for Appellant, Illinois National Insurance Company.
Tracy L. Oakley, Ruston, Matthew P. Loftus, Baton Rouge, Counsel for Appellant, Annessa Monique Theus.
Sentell Law Firm, L.L.C., by C. Sherburne Sentell, III, Minden, Counsel for Appellee, Karen King.
Before WILLIAMS, CARAWAY and DREW, JJ.
CARAWAY, J.
Plaintiff's neck, forehead, jaw and teeth were severely injured when the vehicle in which she was a guest passenger was struck by appellant's vehicle. This appeal concerns the trial court's finding that appellant was 100% at fault in the accident and its awarding general, special and future medical damages totaling $74,111.86. Appellant's insurer also appeals that part of the judgment finding it liable for legal interest on the total award from date of judicial demand until the date of the pretrial tender of its $10,000 policy limits. We now amend the trial court's award for general damages and its computation of the legal interest owed by the insurer and, *1107 as amended, affirm the trial court's judgment.

Facts and Procedural History
Karen King was a guest passenger in a vehicle being driven by her 15-year-old niece, Lindsey Kennedy, on the afternoon of January 13, 1998, in Minden, Louisiana. As the Kennedy vehicle proceeded westbound, it was struck by an oncoming vehicle driven by Annessa Theus, who was attempting a left turn at the signal-controlled intersection. Although disputed at trial, the trial court found that the Kennedy vehicle was indeed favored by the green light.
As a result of the ensuing collision, King was thrown into the windshield, sustained soft tissue and dental injuries, and injured her jaw. While "no dental injuries" was noted on the emergency room chart when she was seen there immediately after the accident, her regular dentist diagnosed eleven fractured teeth when she visited him one week later. Her dental treatment consisted of 12 crowns and 11 root canals. The dentist also prescribed occlusal splint therapy to alleviate temporomandibular joint ("TMJ") symptoms, such as headaches and pain when chewing certain foods. The dentist testified at trial that she would have to wear the splint for the rest of her life.
King sued Theus and the liability insurer, Illinois National, on its 10/20/10 policy limits. Following a bench trial, the trial court, in its written reasons for judgment, found Theus to be 100% at fault. It awarded King $14,111.86 for past medical expenses, $5,000 for future dental expenses and $55,000 in general damages. Judgment was rendered for $74,111.86, subject to a $10,000 credit in favor of Illinois National, which had tendered the policy limit on September 8, 1999, before trial. Illinois National was further cast in judgment for $6,344.93, for judicial interest owing on the entire award from date of judicial demand until the policy limits were tendered.
Illinois National suspensively appealed that part of the judgment allocating judicial interest. Theus appealed, contending that the trial court erred when (1) it failed to assess the other driver with any comparative fault; (2) it failed to cast Illinois National in judgment for judicial interest based on the entire award from date of judicial demand until paid; and (3) it awarded King $55,000 for general damages. King answered the appeal, asserting that the general damages portion of the judgment was inadequate.

Discussion

Liability
Appellant Monica Theus argues that the trial court erred when it failed to allocate any degree of fault for the accident to Kennedy, the driver of the other vehicle. Theus was the left-turning driver at the signal-controlled intersection where the accident occurred. There was a left-turn arrow, and Theus claimed that it turned to a yellow arrow during her turn.
The left-turning motorist has the statutory duty to yield to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard. Smith v. Commercial Union Ins. Co., 609 So.2d 1024 (La.App. 2d Cir. 1992), writ denied, 612 So.2d 86 (La.1993); Price v. City of Slidell, 97-2066 (La.App. 1 Cir.9/25/98), 723 So.2d 455; La. R.S. 32:122. Once the evidence establishes that the turning motorist was attempting to make a left turn when the accident occurred, the burden of proof shifts to that motorist to absolve herself of liability. See, Strong v. Farm Bureau Ins. Co., 32-414 (La.App. 2 Cir.10/29/99), 743 So.2d 949, writ denied, XXXX-XXXX (La.2/4/00), 754 *1108 So.2d 229. If the left-turning motorist is faced with a green arrow left-turn signal, she must prove that she was making such a turn while the arrow was green, or that she had pre-empted the intersection. Thompson v. Chevron U.S.A., Inc., 94-1107 (La.App. 1 Cir.4/7/95), 653 So.2d 1351, writ denied, 95-1173 (La.6/23/95) 656 So.2d 1019; Dunn v. Snyder, 388 So.2d 450 (La. App. 2d Cir.1980).
The trial court's opinion specifically found that the collision occurred in Kennedy's lane of traffic and that Theus was 100% at fault in causing the accident. It explicitly rejected Theus' testimony indicating that the turn arrow was illuminated green as she started her turn and turned yellow as she proceeded through the intersection, as well as her self-serving testimony that Ms. Kennedy was speeding. The trial court instead relied upon the testimony of a third driver, Janice Bath, whose vehicle was proceeding alongside Kennedy's vehicle in the inside lane of travel. As her car proceeded through the intersection with the green light, she was startled by Theus' attempt to turn.
It is well-settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Touchard v. Slemco Elec. Foundation, 99-3577 (La.10/17/2000), 769 So.2d 1200 (citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)). An allocation of fault is a factual determination subject to the manifest error rule. Boggs v. Voss, 31,965 (La.App.2d Cir.6/16/99), 741 So.2d 139. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review; the issue for the reviewing court is not whether the trier of fact was wrong, but whether the fact-finder's conclusions were reasonable under the evidence. Touchard, Id. Our review of the record in the instant case convinces us that the trial court's allocation of 100% fault to Theus for her sudden and unauthorized turn through the intersection is reasonable under the evidence. Accordingly, this assignment of error lacks merit.

Quantum
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Morris v. United Services Auto. Ass'n, 32,528 (La.App.2d Cir.2/18/00), 756 So.2d 549. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993). It is only when an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id. at 1261. Whether an award is excessive depends upon whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Morris, 756 So.2d at 556. If the appellate court's review of the record discloses an abuse of discretion, it may then proceed to determine whether the award is either excessive or insufficient. Orea v. Scallan, 32,622 (La.App.2d Cir. 1/26/00), 750 So.2d 483. However, it is only after such articulated factual analysis discloses an abuse that guidance from prior awards becomes relevant. Babb v. Boney, *1109 30,443 (La.App.2d Cir.4/8/98), 710 So.2d 1132.
Our review of the record indicates that King suffered severe dental injuries as a result of the accident. Her dentist testified that the force with which she impacted the windshield fractured twelve of her teeth below the gum line. In addition to undergoing extensive restorative work to her broken teeth, King also suffers from TMJ, necessitating occlusal splint therapy for the rest of her life. Thus, the TMJ has not resolved itself through treatment; her dentist in fact noted that her TMJ prognosis is "guarded." Furthermore, King's head hit the windshield and shattered it, causing broken glass to be imbedded in her forehead and resulting in facial scarring.
In the instant case, King testified that after the accident she had difficulty sleeping, that her teeth are sensitive to hot and cold, that she has difficulty flossing, that she cannot eat the same kinds of foods that she enjoyed prior to the accident, that she cannot chew gum, that she suffers from frequent headaches, that laughing or talking a lot causes her jaw pain, that her jaw pops, that she wears an upper splint continuously and will continue to do so indefinitely, and that the extensive dental work has changed the appearance of her mouth and lips. Her treating dentist testified that the trauma to the anterior border, or front area of the mandible (chin), had driven the lower teeth into the upper teeth, causing her teeth to fracture and damaging both joints between her upper and lower jaws. In addition to dental restoration involving 12 crowns and 11 root canals, the dentist fabricated an occlusal splint.[1] The dentist testified that it took several months to complete the dental restoration. He described TMJ as resulting when the pivoting point between the lower jaw and the upper jaw or the cushion around it, is damaged, causing muscle spasms leading to headaches and neck pain. Wearing the occlusal splint relieves pressure on the joint to facilitate healing. Finally, the dentist opined that King would have to wear the splint at least twelve hours a day for the rest of her life.
From our review of this evidence, it is evident that King sustained substantial tooth, jaw and facial injuries as a result of the accident which necessarily involved considerable pain and suffering and which will continue to present her significant suffering. Accordingly, we hold that the trial court abused its discretion in awarding $55,000 for general damages.
Our finding that the trial court's general damages award was inadequate to compensate King for her pain and suffering obliges us to review the jurisprudence for amounts awarded for general damages in similar cases.
In Boudreaux v. Blank, 95-547 (La.App. 3d Cir.11/2/95), 664 So.2d 705, the court increased a $15,500 general damage award to $60,000, to more adequately compensate plaintiff for a hip contusion and broken leg, neck and back pain associated with a bulging disc and TMJ for which she wore a splint 24 hours a day. In that case, plaintiff was not referred for orthodontic treatment for more than six months after the accident.
In Clement v. State Through Dept. of Transp. and Development, 528 So.2d 176 (La.App. 1st Cir.1988), plaintiff fractured her jaw and damaged eight teeth after being thrown over her bicycle handlebars in an accident. In addition to having six *1110 root canals, she required surgery which entailed wiring her jaws shut. In spite of developing TMJ as a result of the bicycle accident, her dentist testified that her overall prognosis was good. The trial court awarded $15,749 for past medical bills, $5,000 for future medical expenses and $68,000 in general damages. This award was affirmed on appeal.
In Rhodes v. State Through Dept. of Transp. and Development, 94-1758 (La. App. 1 Cir.12/20/96), 684 So.2d 1134, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487, the 17-year-old plaintiff suffered a fractured jaw requiring two surgeries, TMJ, neck and back pain and headaches following an automobile accident involving the vehicle in which she was a guest passenger. Her dentist noted that all of her problems were resolved within about 18 months after the accident. Her past medical expenses totaled $20,685.14. The court awarded $100,000 in general damages and $6,000 for future medical expenses to compensate plaintiff for her injuries.
In LeBlanc v. Hughes, 94-347 (La.App. 3d Cir.1/11/95), 649 So.2d 1063, writ denied, 95-0345 (La.3/24/95), 651 So.2d 297, the trial court awarded plaintiff $15,000 in general damages for his injuries, including TMJ and a pinched nerve. On appeal, the court reviewed the record and determined that the $15,000 award was inadequate. Plaintiff first consulted his family doctor about a week after the accident for headaches, an earache and jaw pain. Almost two months after the accident, he was diagnosed with TMJ by a dentist who specialized in the disorder. The specialist found that although plaintiff was predisposed to TMJ problems because of a missing molar and the formation of his jaws, the trauma of the accident precipitated his TMJ disorder. The only treatment short of surgery to relieve the pain involved wearing splints continuously and removing them only when eating. The court found that the lowest reasonable award for TMJ where treatment entailed wearing splints indefinitely was $75,000.
In light of our review of the evidence and awards in similar cases, we find that the lowest possible amount which was reasonably within the trial court's discretion to award as compensation for King's injuries was $70,000, and the judgment is therefore amended.

Insurer's Obligation for Legal Interest
The judgment ordered Illinois National to pay $6,344.93, which represented legal interest on the entire award from date of judicial demand until Illinois National's pretrial tender of its policy limits. Illinois National appeals this ruling asserting that no interest was owed on the $10,000 which King received in payment before trial, or alternatively, that only $856.34 in interest was owed. The $856.34 represents legal interest on $10,000 from judicial demand on June 25, 1998 until September 8, 1999, when Illinois National tendered its policy limits.
The Illinois National policy provides, in pertinent part, as follows:
INSURING AGREEMENT
* * *
A. We will pay damages, other than punitive or exemplary, for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured."
LIMIT OF LIABILITY
A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all *1111 damages resulting from any one auto accident.
SUPPLEMENTAL PAYMENTS
In addition to our limit of liability, we will pay on behalf of an "insured":
* * *
3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.
The declaration for coverage lists $10,000 as the limit of liability.
The first issue raised by Illinois National concerns the obligation for pre-judgment interest on the policy limits of $10,000. Illinois National contends that the fixing of legal interest from judicial demand "on all judgments" under La. R.S. 13:4203[2] is inapplicable to the present case since it avoided judgment by its pre-trial tender of the policy limits.
In O'Donnell v. Fidelity General Ins. Co., 344 So.2d 91 (La.App. 2d Cir.1977), this court considered an insurance policy which expressly excluded any obligation of the insurer to pay for interest on amounts owed under the policy. Nevertheless, after considering the opinions of our supreme court on this issue and the provision for legal interest under La. R.S. 13:4203, we stated that "any provision of a liability insurance policy which purports to limit the insurer's liability for legal interest to less than the legal rate on the amount of the judgment against the insurer from date of judicial demand until paid contravenes the statute and, to that extent, cannot be given effect." Id. at 93, citing LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245 (1943); Soprano v. State Farm Mutual Automobile Insurance Company, 246 La. 524, 165 So.2d 308 (1964); and La. R.S. 13:4203.
Despite Illinois National's argument, we believe this long recognized principle for the assessment of legal interest remains applicable in the present case. Illinois National delayed in the tender of its policy limits after the filing of suit, and it received no release at the time of its tender to compromise or settle the interest claim. In addition to La. R.S. 13:4203, La. C.C. art. 2000[3] applies to legal interest imposed for delayed performance of the insurer's obligation. See, Tutorship of Price v. Standard Life Ins. Co., 569 So.2d 261 (La.App. 2d Cir.1990), writ denied, 572 So.2d 91, 92 (La.1991). Accordingly, we conclude that the insurer's obligation to pay legal interest on policy limits remained unsatisfied at the time of trial. Therefore, the trial court's award as to legal interest in the amount of $856.34 is affirmed.
The trial court also ordered Illinois National to pay legal interest on the excess judgment ($64,111.86) owed by its insured from judicial demand until Illinois National's September 1999 tender of its policy limits. Unlike the rule of law applied above which operates regardless of policy provisions, King and Theus must demonstrate that a policy provision provides for payment of such interest on the *1112 excess judgment. King first argues that the insuring agreement's inclusion of prejudgment interest within the policy definition for "damages" authorizes the trial court's award. Nevertheless, the policy makes clear that its coverage for "all damages" is subject to the limitation of liability provisions quoted above. Therefore, with the $10,000 limit of liability having been exhausted and paid in this case, King has no further coverage for legal interest on the excess judgment under the above quoted provisions for the "insuring agreement" and "limit of liability." See, Epps v. City of Baton Rouge, 604 So.2d 1336, 1350 (La. App. 1st Cir.1992), which reached the same conclusion regarding a policy with identical language.
We next consider whether the supplemental payment provision of King's policy supports the award of legal interest on the excess judgment. Supplemental payment provisions in certain policies have focused on coverage for legal interest owed on the excess judgment rendered against the insured. Reviewing the national treatment of such supplemental payment provisions in Terro v. State Farm Mutual Automobile Insurance Co., 169 So.2d 417, 418 (La.App. 3d Cir.1964), Judge Tate observed:
It is reasoned as follows in the jurisdictions which so interpret this policy provision: By this supplemental agreement, the insurer has agreed to pay in addition to policy limits "all interest on the Entire amount of any judgment", between the time of its rendition and the time that the insurer finally pays or tenders into court "that part of the judgment" which represents its policy limits. The cases so holding in general agree that the reason for the provision is to prevent the insured from being prejudiced by the delay in payment of the judgment, which delay is solely within the control of the insurer.
This court has likewise acknowledged such a purpose for the supplemental payment provision. O'Donnell, 344 So.2d at 94, ("The reasoning behind the policy provision and the court's interpretation thereof is to prevent the insured from incurring additional interest because of an appeal by the insurer who has control of the litigation.")
Examining the language of the supplemental payment provision of the Illinois National policy, we find a provision which, when similarly interpreted, does not apply to the present situation. Most significantly, the provision provides for the payment of interest on the excess judgment "accruing after a judgment is entered." Nevertheless, the time period for the accrual awarded by the trial court was for interest before the judgment was entered, from date of judicial demand until Illinois National's pretrial tender. In addition to setting the accrual period for the insurer's interest obligation after entry of judgment, the policy provision indicates that the supplemental coverage runs during "any suit we defend" which is in keeping with the purpose for such provisions recognized in Terro, supra and O'Donnell, supra. Yet, after Illinois National unconditionally tendered the policy limits, it was no longer defending itself as to its liability under the policy. Since the entry of judgment, the continuation of the appellate litigation challenging Theus's liability and the quantum has been in control of Theus and her counsel, who is independent of Illinois National. Finally, the two sentences of the supplemental payment coverage when read together indicate an accrual period for interest on the excess portion of the judgment running from entry of judgment through the time of Illinois National's tender of its policy limits. Since that tender occurred before the entry of judgment, the *1113 supplemental payment provision cannot operate under these facts.[4]

Conclusion
Because of our ruling amending and increasing the amount of general damages, that portion of the trial court's judgment against defendant Annessa Monique Theus for the excess judgment is amended to reflect the amount of $79,111.86, plus legal interest from judicial demand until paid. That portion of the trial court's judgment against Illinois National Insurance Company for legal interest is amended to reflect the amount of $856.34, representing judicial interest on the policy limits from date of judicial demand until defendant's tender of such policy limits. In all other respects, the judgment of the trial court is AFFIRMED.
Costs of this appeal are assessed against appellant, Annessa Monique Theus.
AMENDED AND, AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, KOSTELKA, and DREW, JJ.
Rehearings denied.
WILLIAMS and BROWN, JJ., would grant a rehearing.
NOTES
[1] The dentist described such a splint as a flat plastic plane that fits over the surfaces of the teeth to allow freedom of movement for the joint and to relieve pressure on the joint. He further testified that using splint therapy was a treatment, not a cure, for TMJ.
[2] La. R.S. 13:4203 provides:

Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
[3] La. C.C. art.2000 provides, in pertinent part:

When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924.
[4] Our conclusion regarding the inapplicability of this supplemental payment provision is distinguished from the conclusions reached in Martin v. Champion Insurance Company, 95-0030 (La.6/30/95), 656 So.2d 991 and Fowler v. Roberts, 526 So.2d 266 (La.App. 2d Cir. 1988), writ denied, 531 So.2d 278 (La.1988). Those cases applied a different supplemental payment provision that did not limit the commencement of the running of interest on the excess judgment to the time of entry of judgment.